[No. A109209. First Dist., Div. Three. Jan. 4, 2006.]

CALIFORNIA HIGHWAY PATROL, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ESTEBAN ALLENDE et al., Real Parties in Interest.

## COUNSEL

Bill Lockyer, Attorney General, Miguel A. Neri, Fiel Tigno and Karen Donald, Deputy Attorneys General, for Petitioner.

Ann Miller Ravel, County Counsel, Winifred Botha and Aryn P. Harris, Deputy County Counsel, for County of Santa Clara and the League of California Cities as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

S. Chandler Visher, Matthew J. Witteman and Bradley C. Arnold for Real Parties in Interest.

## OPINION

**POLLAK, J.**—California law permits public agencies such as petitioner California Highway Patrol (CHP) to seek reimbursement of emergency

response costs from any person causing an incident requiring an emergency response as a consequence of driving under the influence of alcohol or drugs (sometimes referred to as DUI). (Gov. Code, § 53150.)[1] In this writ proceeding we consider which costs a public agency may recover under the governing statute.

The trial court granted summary adjudication to real party in interest Esteban Allende, concluding that the CHP may not recover expenses incurred to enforce the laws that prohibit driving under the influence of alcohol or drugs, including the cost of performing a field sobriety test and making an arrest. The trial court limited recovery to response costs for activities which it deemed unrelated to enforcement of the DUI laws, such as directing traffic and ensuring public safety at the accident site, investigating the accident, preparing accident reports, and transporting disabled vehicles. The CHP argues that the trial court applied too restrictive a standard, which would compel it to perform an artificial and unworkable allocation of officer response time into recoverable and nonrecoverable components. We agree with the CHP and, accordingly, grant a peremptory writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant material facts are undisputed. Esteban Allende caused an accident while driving under the influence of alcohol. Three CHP officers responded to the scene. No one was injured and the accident caused what the CHP described as minor damage to the two vehicles involved. Allende concedes the proximate cause of the accident was the negligent operation of his vehicle.

The CHP billed Allende $360 for its costs in responding to the accident. The CHP claimed 7.5 hours of officer time at a rate of $48 per hour, itemized as 3.5 hours for accident investigation, 0.5 hours for vehicle storage, 3.0 hours for "in custody" activities, and 0.5 hours for traffic control.

The 3.5 hours billed for accident investigation are described as officer response time, on-scene investigation, follow-up investigation, and writing reports, including an officer's sworn statement (Form DS-367), a DUI arrest report (Form 202), a vehicle accident report (Form STD 270), and a traffic collision report (Form 555). The half-hour billed for vehicle storage includes time spent calling for a tow, waiting for the tow truck, filling out paperwork related to the tow, and otherwise processing the towing of Allende's vehicle. The three hours for "in custody" time include time spent on a field sobriety test and Allende's arrest as well as the transportation, chemical testing, and

---

[1] All further statutory references are to the Government Code unless otherwise specified.

booking of Allende. The half-hour for traffic control includes time spent directing traffic, placing flares, and otherwise controlling traffic at the scene of the accident.

Allende paid $63 toward the $360 invoice. Then he and another person who received a similar CHP bill for emergency response expenses associated with a DUI-related accident, Michele Grundhoeffer, filed a class action complaint against the CHP. In the operative complaint, Allende and Grundhoeffer seek to certify several classes of persons who received bills from the CHP for emergency response expenses in which some or all of the billed services allegedly are not "emergency response" services. Allende and Grundhoeffer contend the CHP may bill only for goods and services rendered at the scene of an incident or for the salaries of police personnel going to and from the scene. According to the complaint, "law enforcement" costs incurred for the investigation, detention, arrest, and booking of individuals suspected of a DUI offense do not qualify for reimbursement. In addition to seeking declaratory and injunctive relief, the complaint contains causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, restitution, and an equal protection claim that DUI defendants are singled out to pay law enforcement costs without being afforded criminal procedural protections.

Allende filed a motion for summary adjudication as to three of the causes of action for declaratory relief, seeking a determination that under section 53150 the CHP may not charge for the cost of his arrest, the cost of services rendered away from the scene of the accident, or the cost of the DUI investigation.[2] In order to obtain a definitive interpretation of the statutes in question, the CHP waived its right to resolve class issues, including whether certification of a class is proper, prior to adjudication on the merits. The parties prepared a stipulated set of undisputed facts in order to permit the court to address the purely legal question of the proper interpretation of sections 53150 and 53156.

The trial court granted summary adjudication on the first, second, third, and fourth causes of action, declaring the rights and obligations of the parties under sections 53150 and 53156.[3] The trial court held that "the CHP may bill Allende only for the expense of the CHP's emergency response to the

---

[2] Allende moved for summary adjudication of the second, third, and fourth causes of action, which seek declaratory relief. These causes of action seek a determination of the rights and obligations of the parties under section 53150 et seq. with respect to (1) whether the CHP may bill for law enforcement activities, (2) whether the CHP may bill only for goods and services rendered at the scene of an incident, or for the salaries of personnel going to and from the scene, and (3) whether the CHP may bill for investigative costs.

[3] Allende did not move for summary adjudication on the first cause of action for declaratory relief. That cause of action appears merely to reiterate the issues on which Allende seeks declaratory relief in the second, third, and fourth causes of action.

accident on March 26, 2003, that arose directly because of the response to the incident. The CHP can recover the salaries of the CHP officers who have to spend time directly related to an incident. This will include matters such as responding to the scene of an accident . . . , directing traffic and ensuring public safety at the site of the accident . . . , investigating the accident . . . , preparing reports about the accident (including, but not limited to Form STD 270 and Form 555) . . . , [and] transporting any disabled vehicles. The CHP may not, however, recover for officer time spent because a driver was driving the vehicle under the influence as prohibited by Vehicle Code 23152 or other Vehicle Code sections. This will include matters such as performing a field sobriety test, making an arrest, transporting the driver, booking the driver, administering chemical tests, and preparing reports about the potential violation of Vehicle Code 23152 or other Vehicle Code sections (including, but not limited to Form 202)."

The court held that in-custody costs are not recoverable but that costs for traffic control, vehicle storage, and accident investigation are recoverable. A potential factual dispute arose concerning the allocation of time between recoverable and nonrecoverable components for accident investigation because the time spent preparing reports included preparation of the DUI arrest report (Form 202), which is not a recoverable expense under the trial court's analysis. However, Allende conceded that for the purpose of the motion all costs associated with accident investigation could be treated as arising from response to the incident, and the court therefore held the salaries for the full three and a half hours of accident investigation to be recoverable. A triable issue of material fact would have existed but for Allende's concession, which the trial court stated was based on the factually improbable assumption that the officers spent no time preparing the DUI arrest report. The trial court thus concluded the CHP may recover $216 of the $360 Allende was originally charged.

Noting that the interpretation of sections 53150 and 53156 presents a controlling question of law as to which there are substantial grounds for a difference of opinion, the trial court invited interlocutory review of its ruling, citing Code of Civil Procedure section 166.1. The court observed there are four similar cases pending in Alameda County, as well as additional similar cases filed in other counties.

The CHP thereafter filed in this court a petition for a writ of mandate challenging the trial court's order. After we issued an order to show cause, the County of Santa Clara and the League of California Cities submitted a

request to file an amicus curiae brief.[4] County of Santa Clara contends the court's analysis will not be complete unless we first address what constitutes an "incident" triggering a public agency's right to seek reimbursement of costs under section 53150. Because the definition of "incident" bears upon those costs that are recoverable under the statute, we granted the request to file an amicus curiae brief and afforded the parties an opportunity to respond.

DISCUSSION

### 1. *Standard of review*

"An order granting a motion for summary adjudication may be reviewed by way of a petition for a writ of mandate." (*Intrieri v. Superior Court* (2004) 117 Cal.App.4th 72, 81 [12 Cal.Rptr.3d 97]; see Code Civ. Proc., § 437c, subd. (m)(1).) Appeal from a judgment after trial ordinarily represents an adequate remedy at law for a party aggrieved by an order granting summary adjudication. Here, however, interlocutory writ review is appropriate because the petition raises an issue of first impression that is of widespread interest, as the multiplicity of similar lawsuits confirms. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273 [258 Cal.Rptr. 66].) Judicial economy is served by an early appellate resolution of the issue.

"We review de novo the trial court's decision to grant summary adjudication and are not bound by the trial court's stated reasons or rationales." (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 927 [134 Cal.Rptr.2d 101].) Summary adjudication shall be granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) There are no disputed material facts here relevant to those costs that are recoverable under sections 53150 and 53156, subdivision (a).

■ Our task is one of statutory interpretation. " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 221 [17 Cal.Rptr.3d 842, 96 P.3d 141].) "We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the

---

[4] For ease of reference, we refer to amici curiae collectively as amicus curiae or County of Santa Clara.

construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

## 2. *Sections 53150 and 53156*

■   Sections 53150 through 53159 establish the statutory framework allowing public agencies to recover emergency response expenses from persons who intentionally or negligently cause incidents requiring an emergency response. Section 53150 defines the circumstances under which a person driving a motor vehicle may be liable for the expense of an emergency response, and section 53156, subdivision (a) (hereafter section 53156(a)) defines "expense of an emergency response."

Section 53150 provides: "Any person who is under the influence of an alcoholic beverage or any drug, or the combined influence of an alcoholic beverage and any drug, whose negligent operation of a motor vehicle caused by that influence proximately causes any incident resulting in an appropriate emergency response, and any person whose intentionally wrongful conduct proximately causes any incident resulting in an appropriate emergency response, is liable for the expense of an emergency response by a public agency to the incident."[5]

Section 53156(a) defines "expense of an emergency response" as "reasonable costs incurred by a public agency in reasonably making an appropriate emergency response to the incident, but shall only include those costs directly arising because of the response to the particular incident. Reasonable costs shall include the costs of providing police, firefighting, rescue, and emergency medical services at the scene of the incident, as well as the salaries of the personnel responding to the incident."

As originally enacted, section 53155 limited a person's liability for emergency response expenses to $500 for a particular incident. (Added by Stats. 1985, ch. 337, § 1, p. 1474.) In 1986 the Legislature amended section 53155, increasing the liability limit to $1,000 per incident. (As amended by Stats. 1986, ch. 1112, § 1, p. 3908.) Effective January 1, 2005, the liability limit is $12,000 per incident. (§ 53155, as amended by Stats. 2004, ch. 51, § 1.)

---

[5] Similarly, sections 53151 and 53152 hold operators of civil aircraft and boats liable for the expense of an emergency response to a DUI incident or an incident resulting from the operator's intentionally wrongful conduct. Section 53153 sets out presumptions for determining when a person is under the influence.

### 3. What qualifies as an "incident" under section 53150?

The petition requires determination of whether the "expense of an emergency response," as defined in section 53156(a), includes costs associated with functions performed to investigate and prosecute a violation of the DUI laws, as distinct from public safety functions unrelated to potential criminal prosecution. However, before addressing which costs are recoverable, we must first determine what constitutes an "incident" under section 53150, triggering a public agency's right to seek reimbursement. Amicus curiae contends the trial court predicated its analysis on the flawed and unduly restrictive assumption that an "incident" is equivalent to an "accident." According to County of Santa Clara, an arrest for driving under the influence of alcohol or drugs qualifies as an "incident," regardless of whether the driver causes an accident.[6]

■ As a general matter we do not consider new arguments raised on appeal by amicus curiae. (*Younger v. State of California* (1982) 137 Cal.App.3d 806, 813–814 [187 Cal.Rptr. 310].) However, there are occasions when it is appropriate to do so. (See *E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 510–511 [146 Cal.Rptr. 614, 579 P.2d 505].) This is such an occasion. We agree with County of Santa Clara that the definition of "incident" is fundamental to the analysis of those costs that are recoverable under sections 53150 and 53156(a). If a public agency may recover its response costs associated with a DUI arrest even when no accident results, such law enforcement costs necessarily would be recoverable when the driver's intoxication causes an accident. The issue raised by County of Santa Clara is a purely legal issue of statutory interpretation and is not dependent upon the development of a factual record in the trial court. Moreover, the positions taken by the parties and the trial court are based on assumptions about what constitutes an "incident." Accordingly, we address the definition of "incident" as used in section 53150. We have afforded the parties an opportunity to brief the issue. (§ 68081.)

■ Nowhere in the statute is the term "incident" defined. Based on the plain language of section 53150, however, "incident" necessarily means something more than the negligent operation of a motor vehicle while under the influence of an intoxicant. Section 53150 contains five elements that must be satisfied before costs may be imposed: "Any person who is [1] under the influence of an alcoholic beverage or any drug, . . . [2] whose negligent operation of a motor vehicle [3] caused by that influence [4] proximately causes any incident [5] resulting in an appropriate emergency response, . . . . is

---

[6] Although the amicus curiae contends the term "incident" encompasses more than accidents, it does not propose a more precise definition of the term other than to urge that DUI arrests qualify as "incidents."

liable for the expense of an emergency response by a public agency to the incident." The "negligent operation of a motor vehicle" caused by drinking or drug use must proximately cause the "incident" requiring an emergency response. Thus, the "incident" and the impaired driving that cause it are distinct events. ■ Any other reading would render the word "incident" superfluous, violating the principle of statutory construction that "whenever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330 [87 Cal.Rptr.2d 423, 981 P.2d 52].)

■ Although an arrest is an event distinct from the negligent driving that prompts it, an arrest following a traffic stop by itself does not qualify as an "incident." If the Legislature had intended *any* police intervention involving a person driving under the influence to qualify for recovery of response costs, it could have provided simply that a person is liable for costs incurred by a public agency responding to that person's operation of a vehicle while intoxicated. There would have been no need to add the requirement of an incident. Moreover, regardless of how one defines "incident," the term is followed by language limiting the incidents for which costs may be recovered to those "resulting in an appropriate emergency response." (§ 53150.) It would be a highly strained interpretation to consider stopping a motorist for driving under the influence, without more, as an "emergency" within the meaning of section 53150. Indeed, the Vehicle Code defines "emergency response situation" in one context to mean "instances in which necessary measures are needed in order to prevent injury or death to persons or to prevent, confine, or mitigate damage or destruction to property." (Veh. Code, § 23116, subd. (e).) While the purpose underlying the prohibition of driving under the influence and the enforcement of that prohibition is of course public safety, that general objective hardly transforms every arrest for DUI into an emergency.

County of Santa Clara contends that interpreting "incident" as "accident" would lead to absurd results, arguing that a person who scuffs a lamp post while parking would cause an "incident" but an intoxicated driver who gives rise to an emergency response by stalling on train tracks would not. But neither the parties nor the trial court have taken the position that an "incident" must involve an accident. The trial court acknowledged that an event "such as abandoning a vehicle in a roadway and impeding or blocking the normal and reasonable movement of traffic" may constitute an incident. The CHP has chosen as a matter of policy to seek cost recovery only for traffic accidents, but its internal policy documents acknowledge that the statute allows reimbursement for costs associated with *any* DUI incident, not simply accidents. Moreover, we are not persuaded that absurd results will follow unless "incident" is defined to include simple traffic stops resulting in

DUI arrests. As the trial court recognized, an event not involving an accident may necessitate an emergency response. Situations such as the abandonment of a vehicle on railroad tracks, unlike a traffic stop or an arrest at a DUI checkpoint, may involve an emergency response to prevent harm to persons or property and require more of a peace officer's time and attention than the typical enforcement of the DUI laws.

■ To the extent there is ambiguity in the meaning of "incident," we turn to legislative history for guidance. (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272.) The cost recovery statutes, codified in sections 53150 through 53158,[7] were added to the Government Code in 1985 by Senate Bill No. 735 (1985–1986 Reg. Sess.). (Stats. 1985, ch. 337, § 1, p. 1474.) As introduced, Senate Bill No. 735 required the occurrence of a drunk-driving accident before a public agency could recover emergency response costs. The initial proposal would have limited cost recovery to situations involving an "incident resulting in injury to or death to any person, including [the driver], or damage to any property . . . ." (Sen. Bill No. 735 (1985–1986 Reg. Sess.) as introduced Mar. 4, 1985.) The legislation was patterned after other laws allowing recovery of costs incurred in responding to fires started negligently or intentionally. (See Legis. Counsel's Dig., Sen. Bill No. 735 (1985–1986 Reg. Sess.) as introduced Mar. 4, 1985, p. 1.) The Senate subsequently amended Senate Bill No. 735—to address the admissibility in a subsequent criminal action of testimony in proceedings under the cost recovery statute—but it retained the requirement that an incident result in personal injury, death, or property damage in order to permit cost reimbursement. (Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985.)

The Assembly Judiciary Committee next reviewed Senate Bill No. 735 and questioned whether the accident-based limitation was too narrow: "What is the rationale for requiring injury or damage in order to trigger liability? Would it not be more appropriate for liability to arise <u>whenever</u> a public agency reasonably provides emergency services in response to such an incident, whether or not there is damage?" (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985, p. 2.) In response to this concern, the Assembly amended the legislation so that reimbursement could be sought for emergency response costs regardless of whether an incident resulted in property damage or personal injury. (Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended June 12, 1985.) The Legislature ultimately passed this version of the bill. Relying in part on this legislative history, County of Santa Clara argues that the Legislature intended to expand the bill's coverage to include arrests. We

---

[7] Section 53159 addresses several additional situations in which public agencies may seek recovery for emergency response costs and was added to the Government Code by legislation passed in 2004. (Stats. 2004, ch. 51, § 2.)

disagree. While the scope of the statute was expanded to cover more than accidents, there is nothing to indicate the Legislature intended to include arrests following ordinary traffic stops. We have found no support in the legislative history for the proposition that an ordinary traffic stop constitutes an emergency response.

■ County of Santa Clara claims that when the Legislature increased the cost recovery cap in section 53155 from $500 to $1,000, the author of Senate Bill No. 735 clarified that arrests are considered "incidents." However, the document on which amicus curiae bases this claim is not cognizable as legislative history. "[A]s a general rule in order to be cognizable, legislative history must shed light on the collegial view of the Legislature *as a whole.*" (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30 [34 Cal.Rptr.3d 520].) In the document in question, someone identified as the legislative analyst for the author of Senate Bill No. 735 answers questions about the Legislature's intent in enacting the bill. Among other things, the date, source, and purpose of this document are unclear. (See 133 Cal.App.4th at p. 37.) Based on the context of the discussion, the document appears to have been created after both the enactment of Senate Bill No. 735 and the subsequent amendment increasing the cost recovery limit. Legislative history, of course, reflects the understanding of the Legislature as a whole at the time it enacts a statute. The views of an individual legislator or staffer concerning the interpretation of legislation may not properly be considered part of a statute's legislative history, particularly when the views are offered after the statute has already been enacted. (133 Cal.App.4th at p. 38.)

■ County of Santa Clara also suggests the Legislature has tacitly approved the practice of billing drunk drivers for costs associated with ordinary arrests, claiming the Legislature was aware of the practice but left the statute unchanged in this respect when it amended other provisions in the statute. Amicus curiae cites newspaper articles from the late 1980's indicating that a number of cities were attempting to recover costs associated with DUI arrests. The legislative failure to modify a consistent and longstanding administrative interpretation, which the Legislature is presumed to know, may reflect legislative approval of the administrative interpretation. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 22 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) While this principle may apply when a state agency is charged with administering a particular statutory scheme, it has dubious application when numerous cities and counties are charged with applying state law, particularly when they apply the law inconsistently. Even assuming the Legislature as a whole was aware of the practices described in the newspaper articles, those articles at most indicate that in the late 1980's certain cities chose to pursue reimbursement for DUI arrests. The articles do not indicate how widespread or long-standing the practice was. We know, for

example, that the CHP has not applied the law in the same manner as the cities discussed in the articles. In short, there is no consistent and long-standing administrative interpretation of an "incident" and we decline to presume that in failing to further amend the statute the Legislature approved of a particular interpretation followed by a select number of cities.

■ In response to County of Santa Clara's amicus curiae brief, Allende supplied this court with a 1988 opinion letter from the Legislative Counsel addressing whether public agencies may recover costs incurred following DUI arrests. "Opinions of the Legislative Counsel are not binding on the court, though they may be considered in ascertaining legislative intent." *(People v. $31,500 United States Currency* (1995) 32 Cal.App.4th 1442, 1460 [38 Cal.Rptr.2d 836].) The Legislative Counsel concluded that "in studying the legislative history of these [cost recovery] statutes, the use of the word 'incident' was used to mean the occurrence of an accident or an event involving more than simply an arrest." (Ops. Cal. Legis. Counsel, No. 6416 (Oct. 18, 1988) Emergency Response, p. 2.) Noting that the term "incident" is not defined, the Legislative Counsel turned to the definition of "expense of an emergency response" in section 53156(a). (Ops. Cal. Legis. Counsel, at p. 3.) The Legislative Counsel determined that an "incident" entails more than an arrest because the types of expenses that may be claimed in section 53156(a) are emergency service costs, suggesting the Legislature did not intend the cost of ordinary arrests to be recoverable. (Ops. Cal. Legis. Counsel, at p. 3.)

■ We agree with the Legislative Counsel's analysis and conclude that, as used in section 53150, an "incident" is any event that proximately causes an emergency response by a public agency. Although an accident is not necessary to trigger the right to reimbursement, an ordinary arrest, even for driving under the influence of alcohol or drugs, is not sufficient.

4. *Recoverable emergency response costs under section 53156(a).*

The trial court ruled that the CHP may recover costs directly related to the accident response but may not recover the cost of officer time enforcing the DUI laws, in effect dividing emergency response costs into those incurred to protect public safety and those incurred to enforce the DUI laws. The court premised its analysis on the distinction between an incident and the impaired driving that causes an incident, reasoning that section 53156(a) excludes costs relating to enforcement of the DUI laws because those expenses do not directly arise because of the response to the incident. The court took a narrow view of "directly arising," concluding that "even though a cost may be 'triggered' by driving under the influence, it does not 'arise' from an incident unless the cost is based on the incident itself."

The language of the statute and its legislative history do not support such a distinction. Section 53156(a) defines "expense of an emergency response" to mean "reasonable costs incurred by a public agency in reasonably making an appropriate emergency response to the incident . . . ." When the CHP responds to an incident, its reasonable response includes, in addition to directing traffic and investigating the accident, conducting a field sobriety test, making an arrest if appropriate under the circumstances, preparing reports, and booking the driver.[8] As the CHP points out, such tasks are not only reasonable but are necessary components of the CHP's response to an incident caused by an intoxicated driver. Because the CHP is the state agency with the most expertise in conducting DUI-related accident investigations, it is in the best position to determine the appropriate components of an emergency response. Its consistent and long-standing interpretation of what constitutes a reimbursable emergency response expense under section 53156(a) is therefore entitled to deference. (See *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at pp. 20–21.)

While recoverable costs are restricted to those "directly arising because of the response to the particular incident" (§ 53156(a)), this limiting language does not exclude activities related to enforcing the DUI laws. As just indicated, the role of officers at the scene of an incident necessarily includes law enforcement functions. The statute makes no distinction between these and public safety functions. There is no indication that any portion of salaries incurred because of an emergency response is unrecoverable. Rather, "reasonable costs" are defined to "include the costs of providing police, firefighting, rescue, and emergency medical services at the scene of the incident, *as well as the salaries of the personnel responding to the incident.*" (§ 53156(a), italics added.) While the costs of the various services generally are limited to those incurred at the scene, the syntax of the statutory language ("as well as") indicates that the "salaries of the personnel responding to the incident" are not so limited. To the extent the time is spent on activities directly arising from the response to the incident, the salary reasonably

---

[8] According to an internal CHP document prepared by the department's Research and Planning Section: "The Department has interpreted 'appropriate emergency response,' as used in Section 53150 GC, to be all inclusive of actions taken to fully and properly investigate and mitigate a DUI incident. The mitigation of, or response to, a DUI incident involves much more than travel time to the scene and those activities limited to the physical location of the incident itself. The scene is fluid as victims, witnesses, and suspects are transported to hospitals for care, requiring follow-up activities beyond the initial location of the original incident. The time necessary to mitigate this type of incident is considerably different; therefore, these costs as well as activities such as transporting and booking a subject into jail, are included in the list of activities assessed for reimbursement under the Department's DUI Cost Recovery Program." The memorandum explains that this approach is "based on the notion that, not only is an officer required to respond to an incident, but his/her obligation in doing so deprives citizens of a community of an officer's services until an incident is completely mitigated, including booking and report writing."

allocated to that time is subject to reimbursement. Thus, for example, time spent preparing reports or transporting victims or the intoxicated driver from the scene of the incident is eligible for reimbursement.

Allowing cost recovery for law enforcement expenses does not give the term "incident" a different meaning in sections 53150 and 53156(a), as Allende suggests. While negligent operation of a vehicle by a drunk driver is not sufficient to qualify as an incident, it is an element of any incident qualifying for emergency response cost reimbursement. An "incident" is the triggering event that allows a public agency to recover its emergency response costs, but that term does not define which costs are recoverable.

Allende argues that using an incident as a trigger for reimbursement of law enforcement costs will lead to absurd results, giving as an example a DUI driver who hits a guardrail in the process of being stopped on suspicion of driving under the influence. Such an incident, he asserts, would allow the CHP to recover DUI-related costs it would not have been allowed to recover if the driver had missed the guardrail. But an incident must result in an emergency response before reimbursement is permitted, and it is questionable whether such a minor mishap following an ordinary traffic stop would qualify.[9] In all events, we see nothing illogical in allowing the occurrence of an incident to trigger the right to recover costs not otherwise reimbursable following an ordinary DUI arrest without incident. The Legislature singled out drivers who cause incidents resulting in an emergency response to bear the cost of that response. (§ 53150.) It is entirely reasonable to require persons whose drunken or drug-affected driving has escalated to the point of causing an incident to bear the expense of police activities that would not be chargeable to a driver following a simple traffic stop and DUI arrest.

The legislative history supports an interpretation allowing recovery of expenses related to the enforcement of the DUI laws. When the Legislature was considering raising the liability limit in section 53155 from $500 to $1,000 in 1986, the legislative analysis discussed a sample breakdown of expenses for responding to a major accident that included costs for blood and breath testing, an activity Allende describes as a "law enforcement" function.[10] (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1699

---

[9] The collision in which Allende was involved, while causing minor damage, cannot be characterized as a trivial collision following an ordinary traffic stop. A CHP officer observed Allende weaving across lanes of heavy traffic on the freeway in an unsafe manner before Allende came to a stop in a "gore point" between a freeway and a transition road to another freeway. After the CHP officer repeatedly instructed Allende over a public address system to exit the freeway, Allende drove back into traffic and struck from behind a vehicle that had come to a stop on the transition road.

[10] Subsequent legislation cannot change the meaning of an earlier enactment, but it may supply an indication of the intent behind the original legislation that may be considered. (*City of*

(1985–1986 Reg. Sess.) as amended Apr. 28, 1986, p. 2.) That cost breakdown also included the salaries of two patrolmen for five hours, but there was nothing to suggest the patrolmen's time was allocated between their response to the incident and the performance of their law enforcement responsibilities in connection with the incident. (*Ibid.*) Allende points to nothing in the legislative history that suggests the Legislature intended law enforcement officers to divide their response time into DUI response and accident response components.[11]

The Legislature did question which response expenses should be recoverable, but the discussion focused on whether a pro rata share of fixed costs or only incremental costs should qualify for reimbursement. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985, p. 2.) In 1986, when the Legislature increased the liability limit from $500 to $1,000, it also amended section 53156(a) to add the sentence explicitly including within the definition of the expense of an emergency response the salaries of personnel responding to the incident. (Stats. 1986, ch. 1112, § 2, p. 3908; Assem. Com. on Judiciary, Analysis of

---

*Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302, 307, fn. 6 [3 Cal.Rptr.3d 473].)

[11] In a petition for rehearing, Allende does cite the legislative history in support of the contention that investigative costs are not recoverable. Even if such costs were excluded from recovery, the limitation would have little bearing on whether law enforcement officers must allocate their time between accident response and DUI response components because investigative costs do not fall exclusively into either category. Furthermore, the legislative history does not support Allende's claim. Allende points to language in the original version of Senate Bill No. 735 imposing liability "for the expense of an emergency response by a public agency to investigate the incident." (Sen. Bill No. 735 (1985–1986 Reg. Sess.) as introduced Mar. 4, 1985, p. 2, italics added.) The Legislature subsequently amended the bill to remove references to "investigating the incident," leading Allende to speculate the bill was amended in response to the CHP's concern that its budget would be reduced by amounts collected for accident investigation. (Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985; CHP, Analysis of Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Mar. 4, 1985.) Allende points to commentary by the Department of Boating and Waterways stating the bill was "amended to preclude the cost of the 'investigation' of the incident . . . ." (Cal. Dept. of Boating and Waterways, com. on Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985.) Other than that department's comment, we find no support for this conclusion. As the CHP commented at the time, the amendment eliminated the "requirement that the responding agency must investigate the accident." (CHP, Supp. Analysis of Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985.) Thus, rather than precluding recovery for investigation costs, the amendment broadened the reach of the statute to authorize a responding public agency to seek cost recovery even if that agency did not participate in the investigation of the incident. Even after the bill was amended to delete references to incident investigation, the Department of Finance took the position that Senate Bill No. 735 would allow the CHP to recover investigation costs (but not administrative costs associated with collecting payments). (Cal. Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 735 (1985–1986 Reg. Sess.) as amended June 12, 1985, p. 2; see also CHP, Enrolled Bill Rep. on Sen. Bill No. 735 (1985–1986 Reg. Sess.) July 23, 1985.)

Sen. Bill No. 1699 (1985–1986 Reg. Sess.) as amended Apr. 28, 1986, p. 2.) Before the amendment, it was understood that only overtime pay was recoverable as an emergency response cost because the statute did not authorize recovery of fixed costs. (Ops. Cal. Legis. Counsel, No. 9207 (May 9, 1986) Emergency Services; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1699 (1985–1986 Reg. Sess.) as amended Apr. 28, 1986, p. 2.) The legislative analysis of the 1986 amendment makes clear that the language permitting recovery of costs "directly arising" because of the response to the incident was intended to clarify that, with the exception of salaries, a public agency's fixed costs do not qualify for reimbursement.[12] (*Ibid.*) The use of "directly arising" in section 53156(a) is intended to distinguish between fixed and incremental (or "marginal") costs and not, as Allende and the trial court conclude, between law enforcement and public safety costs.

Both Allende and the trial court rely on legislative history indicating that the purpose of the cost recovery statutes was to hold drunk drivers more fiscally accountable for the cost of responding to accidents which they cause. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1699 (1985–1986 Reg. Sess.) as introduced Feb. 5, 1986, p. 1.) We do not agree that this legislative purpose reflects an intent to limit the recovery to non-law-enforcement-related expenses. The intention to hold drunk drivers more fiscally accountable for the cost of responding to accidents does not indicate what is or is not to be included in the cost of responding to an incident.[13]

---

[12] The legislative analysis from 1986 indicates that some public agencies were charging persons for fixed costs not authorized by Senate Bill No. 735. According to the analysis, Senate Bill No. 735 "limits recovery to only those costs which arise directly because of the response to the particular incident and does not permit recovery of a portion of an agency's fixed costs." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1699 (1985–1986 Reg. Sess.) as amended Apr. 28, 1986, p. 2.) The legislative analysis also contains language suggesting that this limitation applies to personnel costs (see *ibid.*), but the statements to this effect are not compatible with the unambiguous statutory language making "salaries," as distinguished from the overtime pay, eligible for reimbursement. Other portions of the legislative history indicate that the new restriction was aimed at excluding from reimbursement the amortization of equipment such as patrol cars and fire engines. No party to the present action has questioned the inclusion of at least some portion of officer salaries in reimbursable expenses.

[13] Allende also relies on comments made during a hearing on legislation proposed in 2004 that would have defined "emergency response" to include an enforcement stop by law enforcement using emergency lights or sirens or both. Allende notes that the bill died in committee. Comments made by an individual legislator in 2004 about unpassed legislation have little value as evidence of legislative intent behind the statute the legislation sought to amend. (See *Martin v. Szeto* (2004) 32 Cal.4th 445, 451 [9 Cal.Rptr.3d 687, 84 P.3d 374] [legislative failure to enact proposed amendment to existing legislation has little value as evidence of Legislature's original intent]; *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 572, fn. 5 [21 Cal.Rptr.3d 331, 101 P.3d 140] [understanding of individual legislator generally not considered].)

At oral argument, counsel for Allende stressed the contention that permitting reimbursement of law-enforcement-related expenses could not have been intended by the Legislature because those convicted of driving under the influence are already subject to fines and fees intended to reimburse expenses incurred in the criminal proceedings. (See Pen. Code, §§ 1463, 1463.001, 1463.17, 1464; *Fines and Forfeitures*, 25 Ops.Cal.Atty.Gen. 122, 123 (1955).) Any theoretical overlap in the expenses which these provisions are intended to cover is minimal since section 53156(a) does not include the principal costs of criminal enforcement, such as the costs of prosecution, judicial salaries and administration, and penal and probationary expenses. Moreover, criminal fines are not imposed unless the driver is prosecuted and convicted. The legislative history of several provisions proposing to modify the maximum amount of cost reimbursement, including the amendments adopted in 1986 and 2004, expressly acknowledged the criminal fines to which an intoxicated driver is subject, without any suggestion that such fines would limit the amount of reimbursement under section 53150. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1699 (1985–1986 Reg. Sess.) as introduced Feb. 5, 1986, p. 3; Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 1830 (2003–2004 Reg. Sess) as introduced Feb. 20, 2004, p. 6; Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 1707 (2003–2004 Reg. Sess.) as introduced Feb. 20, 2004, p. 7 ["This liability is in addition to any other liability fines or fees that are imposed by law"].) Indeed, section 53158 provides expressly that "[i]t is the intent of the Legislature that the recovery of the expenses of an emergency response under this chapter shall supplement and shall not supplant any other provisions of law relating to the recovery of those expenses."

Ultimately, the court's task is to interpret the statute in a manner that is not only consistent with its language, legislative history and purpose, but that is also workable and reasonable in practice. (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 832 [105 Cal.Rptr.2d 59].) Practical considerations weigh heavily in favor of adopting the CHP's interpretation of expenses recoverable under section 53156(a). To require law enforcement agencies to maintain time records allocating officer time between public safety and law enforcement functions would be burdensome and impracticable. Allende contends that segregating law enforcement costs is not impossible, because the CHP already categorizes its officer time into recoverable and nonrecoverable components. While the CHP divides officer response time into categories, those categories do not correspond to law enforcement and accident response functions. As the CHP points out, many of the activities performed by responding officers have multiple purposes and may relate both to accident investigation and to potential criminal prosecution. Allocating between public safety and law enforcement expenses would require arbitrary distinctions and classification of mixed costs. Indeed, in this case to avoid a factual dispute over the proper categorization of an expense, Allende made a concession the trial court acknowledged rested on a factually improbable

assumption. Adopting Allende's interpretation of section 53156(a) would cause intractable uncertainty and should be avoided if possible.

Allende also claims that collecting law enforcement costs from persons not convicted of a crime raises constitutional issues and violates the general principle that counties should bear the costs of law enforcement absent a contrary legislative directive. The purported constitutional infirmity is that DUI defendants are singled out to pay law enforcement costs without criminal procedural protections. We do not agree that imposing response costs on DUI offenders violates constitutional principles. The case on which Allende relies, *People v. Thomas* (1996) 42 Cal.App.4th 798 [49 Cal.Rptr.2d 856], involved the imposition of a criminal fine without finding a violation of the statute on which the fine was based (see *id.* at p. 804). The expenses subject to reimbursement under section 53150 are in the nature of a civil debt collectible by a public agency in the same manner as a contract debt. (§ 53154.) The debt is not a criminal fine and does not require criminal procedural protections. (Cf. *United States v. Ward* (1980) 448 U.S. 242, 248 [65 L.Ed.2d 742, 100 S.Ct. 2636] [distinguishing constitutional protections associated with civil and criminal penalties].) If a person invoiced for the expense of an emergency response disputes the invoice, the public agency must commence an action to collect the invoice amount as if the debt were a contractual obligation. (See Ops. Cal. Legis. Counsel, No. 23833 (Nov. 4, 1985) Emergency Response: Recovery of Costs, p. 1.) In such a civil proceeding, the public agency as plaintiff bears the burden of proving its entitlement to relief, and a person disputing an invoice is afforded adequate due process protections.

██ Although law enforcement costs are generally borne by the counties, this general rule may be overridden by legislation allowing cost recovery. (See *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 859 [223 Cal.Rptr. 846].) The Legislature here has expressly provided that emergency response costs are recoverable. (§ 53150.) In *County of San Luis Obispo*, by contrast, a county sought to recover costs incurred in exercising its police power by relying on general public nuisance statutes, despite case law establishing that governmental entities may not recover the cost of nuisance abatement under such statutes. (*County of San Luis Obispo v. Abalone Alliance, supra*, at pp. 859–860.) Moreover, *County of San Luis Obispo* involved such traditional law enforcement costs as the expense of the capture, detention, and prosecution of persons charged with a crime. (*Id.* at p. 859.) The CHP does not seek to recover costs associated with operating DUI checkpoints, incarcerating DUI suspects, or prosecuting drunk drivers.

██ We conclude that the trial court erred when it excluded from the "expense of an emergency response" in section 53156(a) the costs of activities related to enforcement of the DUI laws. ██ An "appropriate emergency response" to an incident includes the cost of providing police services at the

scene, including, among other possible items, salary costs related to ensuring public safety at the scene of the incident, obtaining appropriate medical assistance, removing vehicles, investigating the cause of the incident, conducting field sobriety tests, and if appropriate arresting and detaining the subject.

Reimbursement may also be obtained for time spent away from the scene by responding public agency personnel, provided the response is reasonable and arises from the incident. Thus, for example, salary costs may be recovered for time spent traveling to and from the scene, transporting the subject from the scene, booking the subject, performing chemical tests, writing customarily required reports (including all accident and DUI-related reports that must be completed as a consequence of the incident), and performing follow-up investigation necessary to complete the reports. All of these activities directly arise because of the response to the incident, and must be performed regardless of whether there is a prosecution for a violation of the DUI laws.

Time spent by responding personnel on activities that are not customarily required as a consequence of investigating and mitigating a DUI incident is not eligible for reimbursement. Thus, salary costs incurred after a subject is booked and required reports prepared are not recoverable as expenses of an emergency response. Such costs, including the cost of an officer's time testifying against a DUI defendant, arise from a decision to prosecute the defendant. These costs are not recoverable under sections 53150 and 53156(a).

The undisputed facts permit a declaration of the rights and obligations of the parties under sections 53150 and 53156(a). Summary adjudication of Allende's declaratory relief causes of action is therefore appropriate, but the costs that the CHP may recover are greater than determined by the trial court. The CHP is entitled to reimbursement of response costs related to law enforcement purposes and, in this case, to all of its claimed costs charged to Allende.

### Disposition

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting Allende's motion for summary adjudication and to enter a new and different order consistent with this opinion. Petitioner shall recover the costs incurred in this writ proceeding.

McGuiness, P. J., and Corrigan, J., concurred.

A petition for a rehearing was denied January 31, 2006, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied March 29, 2006, S141135. Corrigan, J., did not participate therein.