Filed 9/25/13  Jensen v. City of Thousand Oaks CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LINDA JENSEN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF THOUSAND OAKS et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B245880<br>(Super. Ct. No. 56-2011-00406324-<br>CU-MC-VTA)<br>(Ventura County) |

*Allende v. Department of California Highway Patrol* (2011) 201 Cal.App.4th 1006 holds that "drivers must pay for any incident in which [a] CHP officer is dispatched and makes a DUI arrest; [and] cost of officers' fringe benefits is part of payable expense of emergency response . . . ."  Plaintiff Linda Jensen invites us to disagree with *Allende*.  We decline the invitation.

Jensen appeals a judgment of dismissal after the trial court sustained demurrers without leave to amend to her class action complaint for injunctive relief, declaratory relief and damages against defendants City of Thousand Oaks (City) and the Ventura County Sheriff's Department (Sheriff's Department).  Jensen was arrested for driving while intoxicated after the Sheriff's Department received a dispatch call from a person reporting that she was drunk while driving.  After her arrest, the City sent her an

invoice "demanding payment" for a "DUI-Emergency Response Charge." (Gov. Code, § 53150.)[1]

We conclude, among other things, that: 1) pursuant to section 53150, Jensen's conduct caused an "incident resulting in an appropriate emergency response" by the Sheriff's Department even though she was not involved in a traffic accident; and 2) Jensen was therefore liable for the "expense of an emergency response," which includes the sheriff deputies' salary and employee benefit costs. (§ 53156.) We affirm.

FACTS

On January 28, 2011, a caller telephoned the Sheriff's Department to report "a possible drunk driver in the City of Thousand Oaks." Sheriff's deputies were dispatched to the location the caller described. They saw the vehicle matching the description given in the dispatch call. Jensen was the driver. Sheriff deputies stopped her and arrested her for driving under the influence (DUI). She was "taken to jail where she was booked."

On April 21, 2011, the City sent Jensen a letter with an "invoice demanding payment in the amount of $777.60 for a 'DUI-Emergency Response Charge'" relating to the January 28th incident. The City cited section 53150. The invoice included "a per minute rate of $2.40 or $144.00 per hour for the emergency response services charged for" the sheriff deputies' time on the January 28th incident. That rate included "deputy fringe benefit costs in addition to the regular salary of the deputies."

Jensen paid the amount on the invoice and filed a government claim with the City seeking reimbursement for that payment.

On November 3, 2011, Jensen filed a "CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, UNJUST ENRICHMENT, [AND] MONEY HAD AND RECEIVED" against the City. On June 4, 2012, she filed a first amended complaint and added the Sheriff's Department as a defendant. In her action, she requested, among other things, an injunction against the Sheriff's Department

---

[1] All statutory references are to the Government Code unless otherwise stated.

2.

and the City to prevent them "from billing and seeking to collect the cost of DUI arrests under Government Code section 53150 . . . where the DUI arrest was not in conjunction with an emergency response to a traffic accident ('incident') as that term is used under section 53150." She alleged they had a policy that "dispatches by deputies to possible DUI suspects" are "'incidents' allowing charging of emergency response costs pursuant to California Government Code section 53150." Jensen alleged the costs charged by the defendants for DUI incidents were not authorized by statute. She requested declaratory relief as to "[w]hether 'expense of an emergency response' as . . . defined under California Government Code section 53156 includes fringe benefits" as well as the "salary" of the deputies.

The Sheriff's Department and the City filed demurrers to the first amended complaint. The City claimed Jensen could not prevail according to *Allende v. Department of California Highway Patrol* (2011) 201 Cal.App.4th 1006. We agree with City that *Allende* holds that "drivers must pay for any incident in which [a] CHP officer is dispatched and makes a DUI arrest; [and] cost of officers' fringe benefits is part of payable expense of emergency response . . . ."

At the hearing on the demurrers, Jensen's attorney said, "[T]he trial court is bound by the [*Allende*] decision and that in this particular case, this court should probably [sustain] the demurrer based on the [*Allende*] case."

The trial court sustained the demurrers without leave to amend.

DISCUSSION

*Liability for an Emergency Response (Section 53150)*

Jensen was not involved in a traffic accident. She argues that her act of driving while intoxicated did not lead to an "incident resulting in an appropriate emergency response" by the Sheriff's Department under section 53150. She argues she was therefore not "liable for the expense of an emergency response" under that statute and we must reverse the judgment. We disagree.

3.

"'On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.'" (*Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.)

"'"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citations.] . . . Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose.'" (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 732-733.) We begin by looking to the language of the statute, as that is often the best indicator of legislative intent. (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1182.)

Section 53150 provides, in relevant part, "Any person who is under the influence of an alcoholic beverage or any drug, . . . whose negligent operation of a motor vehicle caused by that influence proximately causes *any incident resulting in an appropriate emergency response,* and any person whose intentionally wrongful conduct proximately causes *any incident* resulting in an appropriate emergency response, is liable for the expense of an emergency response by a public agency to *the incident*." (Italics added.)

Respondents claim Jensen's position that section 53150 applies only to traffic accidents is not supported by the language or purpose of that section. They argue the Legislature used the term "incident" to include cases where police are dispatched on calls to track down and arrest drunk drivers such as Jensen. We agree.

Section 53150 does not refer to a "traffic accident." Instead, it broadly applies to "*any incident* resulting in an appropriate emergency response." (Italics added.) Here the dispatch call resulting in Jensen's DUI arrest is the type of event falling within the broad "any incident" language of the statute. Jensen claims the term incident must be limited to traffic accidents. But "[t]his limitation does not appear in the statute and we

4.

may not rewrite the statute to include it." (*Baxter Healthcare Corp. v. California Ins. Guarantee Assn.* (2000) 85 Cal.App.4th 306, 315.)

Jensen claims the legislative history shows lawmakers intended section 53150 to apply only to traffic accidents. We grant her request to take judicial notice of the history of Senate Bill No. 735 and other legislative history documents. The legislative history of Senate Bill No. 735 does not support her claims.

In *California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 500, the court noted that "[a]s introduced, Senate Bill No. 735 required the occurrence of a drunk-driving accident before a public agency could recover emergency response costs." But "[t]he Assembly Judiciary Committee next reviewed Senate Bill No. 735 and questioned whether the accident-based limitation was too narrow." (*Ibid.*) "In response to this concern, the Assembly amended the legislation so that reimbursement could be sought for emergency response costs regardless of whether an incident resulted in property damage or personal injury." (*Ibid.*) Consequently, the scope of the statute was not limited to traffic accidents. (*Id.* at pp. 500-501.) The term "'incident' is any event that proximately causes an emergency response by a public agency." (*Id.* at p. 502.)

Jensen refers to a letter by Senator Edward Royce, the sponsor of Senate Bill No. 735, who described the bill as allowing public agencies to recover the costs of emergency response for drunk drivers who cause "accidents." But "the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.) Moreover, the reliability of the legislator's opinion is of little or no assistance where it conflicts with the legislative intent as defined in the express language of the statute. (*Jones v. Lodge at Torrey Pines Partnership*, *supra*, 42 Cal.4th at p. 1182.)

The Legislative Analyst's June 27, 1985, "ANALYSIS OF SENATE BILL NO. 735" describes the bill as allowing "public agencies to recover the costs of

5.

emergency response activities . . . ." It does not refer to traffic accidents or to any language limiting its operation to such events. Instead, it broadly refers to liability for "the incident requiring the response" and "wrongful conduct while operating a vehicle." (*Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1425 [Legislative Analyst reports may be considered as relevant indicators of legislative intent].)

Jensen's position is also at odds with a Legislative Counsel's Opinion which concluded that the Legislature's use of the term "incident" is not synonymous with, or confined to, the term "accident." (*California Highway Patrol v. Superior Court*, *supra*, 135 Cal.App.4th at p. 502.) Such official opinions assist the courts in determining legislative intent. (*Ibid.*)

That some in the State Senate may have initially intended to place an "accident-based limitation" to this legislation is not relevant. (*California Highway Patrol v. Superior Court*, *supra*, 135 Cal.App.4th at p. 500.) That limited view was ultimately rejected by the Legislature as a whole when "the scope of the statute *was expanded to cover more than accidents . . . .*" (*Id.* at p. 501, italics added.)

Jensen contends section 53150 does not authorize charging fees for an officer's time to track down drunk drivers after receiving a dispatch call. But this claim was rejected in *Allende v. Department of California Highway Patrol*, *supra*, 201 Cal.App.4th 1006.) At the hearing on the demurrers, Jensen's counsel conceded that the facts of her case are "on all fours with" *Allende*. He told the trial court that *Allende* "controls this case." On appeal, Jensen asks us not to follow *Allende* because she claims it goes beyond the scope of the statute. We disagree.

*Allende* involved the validity of a California Highway Patrol (CHP) policy of including as "an emergency response" any "'incident in which an officer is dispatched to a call resulting in a DUI arrest of a driver.'" (*Allende v. Department of California Highway Patrol*, *supra*, 201 Cal.App.4th at p. 1014.) The court held this policy was consistent with the language and purpose of section 53150. (*Id.* at p. 1009.) Jensen

suggests this decision is incorrect because that policy does not involve an emergency response. But the *Allende* court noted that the CHP properly recognized that "'[i]mpaired drivers kill and injure themselves and others with alarming frequency.'" (*Id.* at p. 1015.) "'Sometimes the driver may be reported to be weaving, sometimes the driver may have been reported to have almost hit other vehicles . . . .'" (*Id.* at p. 1016.) "'[A]ny officer responding to such a call is responding to a potential emergency that *requires an urgent response*.'" (*Ibid.*, italics added.)

The court ruled that the CHP correctly determined that "when a dispatch is triggered by a person driving under the influence of alcohol or drugs, the situation in virtually all circumstances is an emergency . . . ." (*Allende v. Department of California Highway Patrol*, *supra*, at 201 Cal.App.4th at pp. 1014-1015.) It noted that the CHP policy was consistent with the emergency response definition in the Vehicle Code. It said the Vehicle Code defines "emergency response situation" as including "'"instances in which necessary measures are needed in order *to prevent injury or death* . . . .'"'" (*Id.* at p. 1015, italics added.) Tracking down intoxicated drivers on dispatch calls before they collide with other vehicles falls within that definition.

Jensen claims the *Allende* decision gave unwarranted deference to the CHP and no concern for the lawmakers' views or its own judicial role as the decision-maker. We disagree. The court recognized that because the CHP is the major state agency charged with emergency response enforcement on state highways, its construction of the law is "entitled to great weight." (*Woosley v. State of California* (1992) 3 Cal.4th 758, 776.) The court did not, as Jensen suggests, surrender its decision-making authority to the CHP or rubber stamp its procedures. It reviewed the CHP policies in depth and ruled they were consistent with the legislative intent. (*Allende v. Department of California Highway Patrol*, *supra*, 201 Cal.App.4th at pp. 1009, 1020.) It decided they were rational measures taken to further the underlying statutory goals.

Jensen suggests the *Allende* decision is an unauthorized expansion of state policy on liability for cost reimbursement. But any change in policy was the result of the

Legislature enacting section 53150. Moreover, the *Allende* decision is consistent with the long-standing state policies that attempt to deter people from driving while intoxicated and require intoxicated drivers to take financial responsibility for their actions. (*Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1338 ["Deterring drunk driving . . . undeniably serves a highly important governmental interest"]; *Peterson v. Superior Court* (1982) 31 Cal.3d 147, 155; *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 897-899; § 53150; Pen. Code, §1203.1, subd. (e).) Including Jensen's incident within section 53150 furthers these goals and provides a proper incentive to discourage such unlawful conduct.

*Section 53156 Includes Costs for Salary and Benefits*

Jensen contends she is only responsible for paying for the officers' salary for the time spent on this incident. She claims she is not responsible for costs that include the officers' employee benefits under section 53156. We disagree.

Section 53156, subdivision (a) provides, in relevant part, "'Expense of an emergency response' means reasonable costs incurred by a public agency in reasonably making an appropriate emergency response to the incident, but shall only include those costs directly arising because of the response to the particular incident. *Reasonable costs shall include the costs of providing police . . . at the scene of the incident, as well as the salaries of the personnel responding to the incident.*" (Italics added.)

Jensen argues the statute only refers to the salaries of responding officers, not the employee benefits that government entities pay for such employees.

But employee benefits paid to responding officers are costs "directly arising because of the response to the particular incident." Intoxicated drivers causing the response are responsible for reimbursing the public entities for those costs. As the Court of Appeal in *Allende* correctly noted, "[T]he cost of fringe benefits unquestionably is a direct personnel cost . . . ." (*Allende v. Department of California Highway Patrol*, *supra*, 201 Cal.App.4th at p. 1020.) "Whether or not considered part of the officer's 'salary,' the cost of benefits is part of 'the costs of providing police . . . services' within the meaning of section 53156." (*Ibid.*) The Legislature wanted the reasonable and necessary

8.

governmental costs of emergency response to be assumed by the intoxicated driver and not the public at large. Jensen's request to exclude the cost of employee benefits that public agencies must pay to responding officers "would defeat the objective of full cost recovery and is not required by a reasonable interpretation of section 53156." (*Ibid.*)

We have reviewed Jensen's remaining contentions and we conclude she has not shown grounds for reversal.

The judgment is affirmed. Costs on appeal are awarded in favor of respondents.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

9.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Law Offices of Bradley C. Arnold, Bradley C. Arnold for Plaintiff and Appellant.

Charmaine Jackson, Assistant City Attorney, for Defendant and Respondent City of Thousand Oaks.

Leroy Smith, County Counsel, Marina Porche, Assistant County Counsel, for Defendant and Respondent Ventura County Sheriff's Department.