[No. A123856. First Dist., Div. Three. Mar. 26, 2010.]

VEENA PURIFOY et al., Plaintiffs and Appellants, v.
GLENN HOWELL et al., Defendants and Respondents.

## COUNSEL

Evans & Page and Corey A. Evans for Plaintiffs and Appellants.

Silvano B. Marchesi, County Counsel, and Steven P. Rettig, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**JENKINS, J.**—Food and Agricultural Code[1] section 31108, subdivision (a) (section 31108(a)) provides that the required "holding period" for a stray dog impounded in a public or private animal shelter is "six business days" (or, if

---

[1] All undesignated statutory references are to the Food and Agricultural Code.

certain exceptions apply, "four business days"), not including the day of impoundment. (§ 31108(a).) Contra Costa County Animal Services (CCCAS) operates two animal shelters, both of which are open to the public Tuesday through Saturday for owner redemption and adoption of animals. CCCAS states that it counts those days as "business days" in calculating the holding period under section 31108(a).

Plaintiffs Veena Purifoy, Lorree Lewis, and Voices for Pets filed suit against defendants Contra Costa County (County) and Glenn Howell, the director of CCCAS,[2] alleging that defendants violated section 31108(a) by counting Saturday as a "business day." The trial court granted summary judgment in favor of defendants, and plaintiffs appealed.

We conclude that the term "business days" in section 31108(a) does not include Saturdays. Accordingly, we reverse the judgment and remand for further proceedings.

## I. SECTION 31108(a)

Section 31108(a) provides that the required holding period for a stray dog impounded in a public or private shelter is "six business days, not including the day of impoundment." (§ 31108(a).) There are two exceptions to the six-business-day holding period. (*Ibid.*) First, under section 31108, subdivision (a)(1) (section 31108(a)(1)), if the shelter "has made the dog available for owner redemption on one weekday evening until at least 7:00 p.m. or one weekend day, the holding period shall be four business days, not including the day of impoundment." (§ 31108(a)(1).) Second, under section 31108, subdivision (a)(2) (section 31108(a)(2)), if the shelter "has fewer than three full-time employees or is not open during all regular weekday business hours, and if it has established a procedure to enable owners to reclaim their dogs by appointment at a mutually agreeable time when the public or private shelter would otherwise be closed, the holding period shall be four business days, not including the day of impoundment." (§ 31108(a)(2).) Section 31108(a) provides that, with exceptions that are not relevant here, "stray dogs shall be held for owner redemption during the first three days of the holding

---

[2] Plaintiffs' operative second amended complaint (SAC) names CCCAS and Howell as defendants; County answered for CCCAS.

period, not including the day of impoundment, and shall be available for owner redemption or adoption for the remainder of the holding period."[3] (§ 31108(a).)

## II. FACTUAL AND PROCEDURAL BACKGROUND

Purifoy's dog Duke was impounded by CCCAS on Thursday, October 5, 2006, and was held at the CCCAS animal shelter in Pinole. A new owner adopted Duke on Wednesday, October 11, 2006. Duke was subsequently returned to Purifoy.

As noted above, the shelters operated by CCCAS, including the Pinole shelter, are open Tuesday through Saturday for owner redemption and adoption, and CCCAS counts those days as "business days" in calculating the holding periods under section 31108(a). The shelters are closed on Sunday, Monday, and major holidays.

Because Duke was made available for owner redemption on a weekend day (Saturday, Oct. 7, 2006), a four-business-day holding period applied pursuant to section 31108(a)(1). CCCAS states that, in calculating the four-business-day holding period for Duke, it excluded Thursday, October 5, 2006 (the day of impoundment), and Sunday and Monday, October 8 and 9, 2006 (days on which the shelter was closed). CCCAS counted the following days as "business days": (1) Friday, October 6, 2006; (2) Saturday, October 7, 2006; (3) Tuesday, October 10, 2006; and (4) Wednesday, October 11, 2006. CCCAS held Duke exclusively for owner redemption for the first three of those days, and permitted his adoption on the fourth day, i.e., Wednesday, October 11, 2006.

Purifoy, along with plaintiffs Lorree Lewis and Voices for Pets, filed suit, alleging in their SAC that CCCAS and Howell violated section 31108(a) by

---

[3] Section 31108(a) provides in full:

"(a) The required holding period for a stray dog impounded pursuant to this division shall be six business days, not including the day of impoundment, except as follows:

"(1) If the public or private shelter has made the dog available for owner redemption on one weekday evening until at least 7:00 p.m. or one weekend day, the holding period shall be four business days, not including the day of impoundment.

"(2) If the public or private shelter has fewer than three full-time employees or is not open during all regular weekday business hours, and if it has established a procedure to enable owners to reclaim their dogs by appointment at a mutually agreeable time when the public or private shelter would otherwise be closed, the holding period shall be four business days, not including the day of impoundment.

"Except as provided in Section 17006, stray dogs shall be held for owner redemption during the first three days of the holding period, not including the day of impoundment, and shall be available for owner redemption or adoption for the remainder of the holding period."

counting Saturday as a "business day."[4] The SAC included four causes of action: (1) violation of section 31108 (First Cause of Action); (2) preemption of a Contra Costa County Code provision by section 31108 (Second Cause of Action); (3) trespass and damage to chattel (Third Cause of Action); and (4) a taxpayer claim for waste of public funds (Code Civ. Proc., § 526a) (Fourth Cause of Action). The SAC requested that Purifoy be awarded special and punitive damages, prejudgment interest, costs and attorneys' fees. For the taxpayer plaintiffs, Lewis and Voices for Pets, the SAC requested a writ of mandate requiring defendants to comply with section 31108(a)(1), declaratory and injunctive relief, costs and attorneys' fees.

Defendants filed a demurrer to the SAC. Prior to the initial hearing on the demurrer, the trial judge assigned to hear the matter issued a tentative ruling, in which she stated in part: " 'Business days' in ordinary parlance is generally accepted to mean days other than a weekend (Saturday or Sunday) or public holiday." After holding a hearing, the judge issued an order sustaining the demurrer without leave to amend as to the Second Cause of Action (preemption), overruling it as to the Third and Fourth Causes of Action (the trespass and taxpayer claims), and striking the request for punitive damages. As to the First Cause of Action (violation of § 31108), the judge directed the parties to submit supplemental briefing as to the meaning of "business days" in section 31108(a).

The matter was assigned to another judge, who, after the filing of supplemental briefs and a further hearing, entered an order overruling defendants' demurrer as to the First Cause of Action. The judge stated in part: "The usual and ordinary meaning of the term 'business days' is weekdays, excluding Saturday, Sunday and public holidays. This meaning of 'business days' is also the one most frequently used in the Codes. [¶] Applying the ordinary meaning of the terms also complements the legislative intent of the statute. . . . [¶] Because the Legislature clearly knows how to define the term 'business days,' but elected not to do so, this court applies its ordinary, usual meaning, which comports with the purpose of the statute."

Defendants answered the three remaining causes of action in the SAC.

Subsequently, defendants filed a motion for summary judgment or in the alternative for summary adjudication, and plaintiffs filed a motion for summary adjudication, both of which addressed the interpretation of "business days" in section 31108(a). Defendants argued that, if the term "business

---

[4] The parties state that Lewis and Voices for Pets are "taxpayer plaintiffs." The trial court granted a motion by plaintiffs to file a third amended complaint (TAC), in which different taxpayer plaintiffs would replace Lewis and Voices for Pets; however, the TAC apparently had not yet been filed when the trial court granted defendants' motion for summary judgment.

days" were construed to include Saturdays, all of plaintiffs' remaining causes of action failed. Defendants also raised other arguments in their motion, including contending that Purifoy could not establish the elements of public entity liability for a violation of section 31108, that Purifoy could not pursue a common law theory of trespass and damage to chattel against a public entity, and that the taxpayer plaintiffs could not establish a cause of action under Code of Civil Procedure section 526a.[5] Defendants requested the entry of summary judgment, or, in the alternative, summary adjudication on five specified issues.[6]

The matter was again assigned to another judge, Judge Joyce Cram. After a hearing, Judge Cram entered a written order granting defendants' motion for summary judgment (based on the interpretation of "business days" in § 31108(a)), and denying plaintiffs' motion for summary adjudication. In her order, Judge Cram stated: "The term 'business days,' as used in [section 31108(a)] has more than one possible meaning. This court finds that Defendant's interpretation of the term 'business days' to include all days on which a shelter is open, including Saturdays, is consistent with the purposes and legislative history of the statute, and 'will best attain the purposes of the statute.['] [Citation.]" Judge Cram also stated: "Presumably, the legislature was aware that if shelters could not count Saturdays as business days for the purpose of the holdover period, they would have no incentive to stay open on Saturdays. In fact, shelters like the Pinole shelter, which is open on Saturday but closed on a weekday, would, in effect, be penalized for staying open on Saturday, because neither day would count toward the holding period." Judge Cram also ruled on the parties' objections to evidence submitted in connection with the motions. Because she granted summary judgment on the basis of the meaning of "business days" in section 31108(a), Judge Cram did not reach the other issues defendants raised in their motion (although she suggested at oral argument that she would be inclined to rule against defendants on those issues).

Judge Cram entered judgment in favor of defendants and against plaintiffs.

---

[5] Plaintiffs' motion for summary adjudication is not in the record, so it is not clear whether plaintiffs presented issues other than the interpretation of "business days" in section 31108(a).

[6] In their notice of motion and motion, defendants requested "summary adjudication as follows: [¶] 1. 'Business days' as defined in [section 31108] includes Saturday; [¶] 2. [Section 31108] authorizes the adoption of stray dogs beginning on the fourth business day after the stray dog was impounded; [¶] 3. Defendants complied with [section 31108] by holding plaintiff Veena Purifoy's stray dog for three business days exclusively for owner redemption prior to the dog's adoption by a new owner on the fourth business day; [¶] 4. Plaintiff Veena Purifoy cannot prosecute a common law action for trespass to chattel against defendants; and [¶] 5. Plaintiffs cannot prove any illegal or wasteful expenditure of public funds pursuant to Code of Civil Procedure [section] 526a."

Plaintiffs appealed. Plaintiffs challenge Judge Cram's interpretation of section 31108(a), her conclusion that defendants did not violate the statute, and one of her evidentiary rulings.[7]

## III. DISCUSSION

### A. *Standard of Review*

"The rules of review [of summary judgment rulings] are well established. If no triable issue as to any material fact exists, the defendant is entitled to a judgment as a matter of law. [Citations.] In ruling on the motion, the court must view the evidence in the light most favorable to the opposing party. [Citation.] We review the record and the determination of the trial court de novo. [Citations.]" (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499 [64 Cal.Rptr.3d 803, 165 P.3d 581].) In particular, the interpretation of section 31108(a) is a question of law that we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### B. *The Meaning of "Business Days" in Section 31108(a)*

In order to resolve the parties' dispute over the proper construction of the term "business days," we are guided by the time-honored principles that govern the interpretation of statutes. "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] . . . If the statutory terms are ambiguous, we may examine extrinsic sources, including

---

[7] Defendants state in a footnote that the Legislature has suspended the operation of section 31108 for fiscal year 2009–2010, and that therefore "to the extent [plaintiffs] are seeking redress for alleged ongoing violations of section 31108, this action is moot." (See Assem. Bill No. 4X 1 (2009–2010 4th Ex. Sess.) enacted as Stats. 2009, 4th Ex. Sess. 2009–2010, ch. 1, § 537, subd. (3)(c), amending Item 8885-295-0001 of the Budget Act of 2009 (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 1, § 2.00).) We need not address this undeveloped argument. (See *People v. Lucatero* (2008) 166 Cal.App.4th 1110, 1115, fn. 1 [83 Cal.Rptr.3d 364] ["[a] footnote is not a proper place to raise an argument on appeal"].) In any event, even if the legislation cited by defendants affected the viability of some of plaintiffs' underlying claims (a question we need not decide), that legislation provides no basis for dismissing this appeal as moot. Section 31108 was operative in 2006, when Purifoy's dog was impounded. To resolve the parties' legal arguments arising from that incident, we must interpret "business days" in section 31108. (See *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717] [appeal will not be dismissed where there remain material questions for the court's determination].)

the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218] (*Smith*); accord, *California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 496–497 [38 Cal.Rptr.3d 16] (*California Highway Patrol*).)

### 1. *Legal Definitions of "Business Days"*

Section 31108 does not define the term "business days." Plaintiffs argue that the usual and ordinary meaning of "business days" is weekdays (Monday through Friday), and that the term excludes Saturdays, Sundays, and legal holidays. As noted above, the assigned trial judge reached this conclusion in overruling defendants' demurrer.

We agree that this is a common understanding of the term "business days," as it is used in ordinary discourse. Moreover, as plaintiffs note, several California statutory provisions define "business days" (for purposes of particular statutory schemes) to include weekdays and to exclude Saturdays, Sundays and legal holidays. (See, e.g., Cal. U. Com. Code, § 6105, subd. (b)(3) ["As used in this subdivision, 'business day' means any day other than a Saturday, Sunday, or day observed as a holiday by the state government"]; Ins. Code, § 1215, subd. (g) [as used in art. 4.7 of ch. 2 of pt. 2 of div. 1 of the Ins. Code, " '[b]usiness day' is any day other than Saturday, Sunday, and any other day that is specified or provided for as a holiday in the Government Code"]; Fin. Code, §§ 867, subd. (c)(2) [for purposes of § 867 of the Fin. Code, " '[b]usiness day' means any day other than a Saturday, Sunday, or legal holiday"], 1852, subd. (b) [as used in ch. 14A of div. 1 of the Fin. Code, " '[b]usiness day' means any day other than Saturday, Sunday or any other day which is specified or provided for as a holiday in the Government Code"], 31030, 31033 [same definition governs div. 15 of the Fin. Code], 33040, 33044, subd. (a) [similar definition governs div. 16 of the Fin. Code]; see also Code Civ. Proc., §§ 10, 135 ["[h]olidays" within meaning of Code Civ. Proc. are Sundays and days specified as "judicial holidays," which include Saturdays], 12, 12a, subd. (a) [in computing time in which to perform an act, if the last day falls on a "holiday," the time is extended to and including the next day that is not a "holiday"; " 'holiday[s]' " include Saturdays]; Cal. Rules of Court, rule 1.10(a) & (b) [if last day for performance of act falls on "a Saturday, Sunday, or other legal holiday," the period is extended to and includes the next day that is not a holiday].)

Additionally, plaintiffs assert that courts, in numerous opinions, have used the term "business days" (in general discussions rather than in connection

with particular statutory language) to mean weekdays and not Saturdays, Sundays or legal holidays. (See, e.g., *Southern California Edison Co. v. Public Utilities Com.* (2006) 140 Cal.App.4th 1085, 1106 [45 Cal.Rptr.3d 485] ["Excluding the weekend and holiday, the time allowed for the parties to respond to the merits of the new proposals was only three business days."]; *Berry v. Chaplin* (1946) 74 Cal.App.2d 669, 680 [169 P.2d 453] ["Counsel labored on the case not only during business days but on many nights, Saturdays and Sundays including the holiday season."].)

However, just as Judge Cram found in her order granting summary judgment, a review of California code provisions also reflects that the Legislature has often defined the term "business days" in a manner that includes Saturdays.[8] Specifically, the Civil Code includes a definition of "business days" that includes Saturdays. Civil Code section 9 states that "[a]ll other days than those mentioned in [Civil Code] Section 7 are business days for all purposes . . . ." (Civ. Code, § 9.) Section 7 of the Civil Code states that "holidays" within the meaning of the Civil Code are "every Sunday and such other days as are specified or provided for as holidays in" the Government Code. (Civ. Code, § 7.) Finally, Government Code section 6700 lists California's state holidays, including "[e]very Sunday" and a number of specified holidays; the list does not include Saturdays. (Gov. Code, § 6700.) Accordingly, under these statutes, Saturday is not a holiday (see *Gans v. Smull* (2003) 111 Cal.App.4th 985, 989 [4 Cal.Rptr.3d 353]); it is instead a "business day."[9] (Civ. Code, § 9.)

In addition, provisions of the Civil Code and other codes incorporate (for the purposes of those provisions) the definition of "business days" in Civil Code section 9, or use similar definitions that also treat Saturday as a "business day." (See, e.g., Civ. Code, §§ 2924b, subd. (h) [incorporating definition in Civ. Code, § 9], 2924c, subd. (e) [same], 1689.5, subd. (e) [" '[b]usiness day' " means any calendar day except Sunday and specified

---

[8] At the summary judgment hearing, Judge Cram stated that the term "business days" in section 31108 was ambiguous. Plaintiffs' counsel appeared to agree, stating: "What is meant [by 'business days'] is unclear because they [the Legislature] didn't reference the definition anywhere."

[9] Government Code section 6702 provides that a portion of each Saturday is considered a holiday for certain purposes. "Every Saturday from noon to midnight is a holiday as regards the transaction of business in the public offices of the state and political divisions where laws, ordinances, or charters provide that public offices shall be closed on holidays. . . ." (Gov. Code, § 6702.) However, this provision does not establish that Saturdays are holidays for all purposes (or that Saturdays are excluded from the term "business days"). (See *Lancel v. Postlethwaite* (1916) 172 Cal. 326, 330–331 [156 P. 486] [Saturday was not a holiday where statute did not specify the entire day was a holiday]; *People v. Englehardt* (1938) 28 Cal.App.2d 315, 317–318 [82 P.2d 489] [same].) This treatment of Saturdays contrasts with the Legislature's categorical exclusion of Sundays and legal holidays from the term "business days." (See Civ. Code, §§ 7, 9; Gov. Code, § 6700.)

"business holidays"]; Bus. & Prof. Code, §§ 2546.6, subd. (a)(2) [" 'business day' means each day except a Sunday or a federal holiday"], 7165, subd. (h) [adopting meaning of "business day" in Civ. Code, § 9], 17550.17, subd. (g) [same]; Food & Agr. Code, § 55601.4 [adopting same definition, "[f]or purposes of this section"]; Ins. Code, § 15027, subd. (k) [adopting definition of "business day" in Civ. Code, § 1689.5, subd. (e)].)

These statutory provisions illustrate that the Legislature has both excluded and included Saturdays in defining the term "business days." We agree, therefore, with Judge Cram's conclusion that the term "business days" in section 31108(a) is ambiguous. Accordingly, we must consider the other language in the statute, as well as the legislative purpose underlying the statute, and "choose the construction that comports most closely with the Legislature's apparent intent." (*Smith, supra*, 39 Cal.4th at p. 83; accord, *California Highway Patrol, supra*, 135 Cal.App.4th at pp. 496–497.)

### 2. The Legislative Intent to Lengthen the Holding Period and to Promote Owner Redemption and Adoption

#### a. The 1998 Amendments to Section 31108

Prior to the Legislature's 1998 amendment of the statute, section 31108 provided that an impounded dog could not be killed before 72 hours had elapsed from the time the dog was impounded. (Former § 31108 (Stats. 1967, ch. 15, § 2, p. 358) amended by Stats. 1998, ch. 752, § 12, p. 4907; see Legis. Counsel's Dig., Sen. Bill No. 1785, 6 Stats. 1998 (1997–1998 Reg. Sess.) Summary Dig., p. 322.) In 1998, the Legislature replaced the 72-hour holding period with the current holding periods of six or four "business days." (Stats. 1998, ch. 752, § 12, p. 4907.) The Legislature enacted this amendment as part of Senate Bill No. 1785, which made a number of statutory changes relating to stray animals. (See Stats. 1998, ch. 752, §§ 1–22, pp. 4903–4917; Legis. Counsel's Dig., *supra*, at pp. 322–323.) In 2000, the Legislature made further changes to section 31108, which are not material to the issue presented in this appeal.[10] (§ 31108; Assem. Bill No. 2754 (1999–2000 Reg. Sess.) enacted as Stats. 2000, ch. 567.)

#### b. The Statutory Language

The amended text of section 31108(a) demonstrates that the Legislature intended both to lengthen the holding period for stray dogs and to ensure

---

[10] County has incorporated the provisions of section 31108 into its code. (See § 30501, subd. (a) [county or city may adopt specified state statutory provisions, including § 31108, for application within the county or city]; Contra Costa County Code § 416-4.206 [incorporating § 31108 and other provisions by reference].)

that owners and potential adoptive owners have sufficient access to shelters to redeem and adopt dogs. The core mandate of the revised statute is a holding period (six or four "business days") that is longer (and, in some cases, significantly longer) than the previous 72-hour holding period. (§ 31108(a).) The longer holding period increases opportunities for redemption and adoption. In addition, the Legislature sought to encourage shelters to provide owner access at times other than typical weekday business hours. In this regard, the statute rewards shelters that do so with a shorter holding period of four, rather than six, business days.[11]

### c. *Statements of Intent in the Enacting Legislation*

In section 1 of Senate Bill No. 1785 (1997–1998 Reg. Sess.) (which is uncodified) (Senate Bill No. 1785), the Legislature included findings and declarations and summarized the intent of the act. (Stats. 1998, ch. 752, § 1, pp. 4903–4905.) Section 1 confirms that the central purposes of the act included lengthening holding periods and ensuring access to shelters for owner redemption and adoption.

In Senate Bill No. 1785, section 1, the Legislature stated that it sought to provide for an adequate holding period, increase opportunities for redemption and adoption of impounded stray animals, and end euthanasia of adoptable and treatable animals. (See Stats. 1998, ch. 752, § 1(a)(2), (b)(1)–(2), (c)(1), (h), (i), pp. 4903–4905.) The Legislature stated in section 1 that "lost animals should be held for a period of time to ensure that the owner has proper access to redeem the animal." (*Id.*, § 1(i), p. 4905.) The Legislature also found and declared that "[r]edemption of owned pets and adoption of lost or stray adoptable animals is preferable to incurring social and economic costs of euthanasia." (*Id.*, § 1(b)(1), p. 4904; see also *id.*, § 1(a)(2), pp. 4903–4904

---

[11] As discussed above, the four-business-day holding period applies if (1) the shelter "has made the dog available for owner redemption *on one weekday evening until at least 7:00 p.m. or one weekend day*," or (2) the shelter "has fewer than three full-time employees or is not open during all regular weekday business hours," and "*has established a procedure to enable owners to reclaim their dogs by appointment at a mutually agreeable time when the [shelter] would otherwise be closed.*" (§ 31108(a)(1)–(2), italics added.)

In a letter printed in the Senate Daily Journal, the author of Senate Bill No. 1785 (1997–1998 Reg. Sess.), Senator Tom Hayden, stated that the shorter holding period specified in the second of these exceptions (§ 31108(a)(2)) is "intended to accommodate the needs of shelters in rural areas or very small cities where shelters have limited staffing capability, and are not open during regular weekday business hours." (Sen. Tom Hayden, letter to Sen. Secretary Gregory Schmidt, Aug. 28, 1998, 4 Sen. J. (1997–1998 Reg. Sess.) p. 6534, also reprinted at Historical & Statutory Notes, 31C pt. 2 West's Ann. Food & Agr. Code (2001 ed.) foll. § 31108, p. 140.)

[finding that "[p]ublic and private shelters and humane groups should work together to end euthanasia of adoptable and treatable animals by 2010"].)[12]

Consistent with the purpose of promoting access to shelters, the Legislature found that "[s]helters should be open during hours that permit working pet owners to redeem pets during nonworking hours." (Stats. 1998, ch. 752, § 1(b)(2), p. 4904; accord, *id.*, § 1(i), p. 4905.) If the owner does not claim the animal, the shelter "should have the duty to make the animal available for adoption for a reasonable period of time . . . ." (*Id.*, § 1(h), p. 4905.) Finally, the Legislature stated that one purpose of the act was to "[i]ncrease the focus of shelters to owner redemption and adoption by making recordkeeping mandatory to aid in owner redemption, providing owner relinquished pets the same holding period as stray animals to allow for adoption, and providing for an explicit adoption period." (*Id.*, § 1(c)(1), p. 4904.)

### d. *Legislative History*

The legislative history of Senate Bill No. 1785[13] includes no direct evidence of legislative intent as to the meaning of "business days."[14] However, the committee analyses of Senate Bill No. 1785 include general statements of legislative intent (some attributed to the author of the bill, and others stated generally by the reporting committees) that are consistent with the purposes the Legislature ultimately expressed in section 1 of Senate Bill No. 1785, including lengthening the holding period, increasing opportunities for owner redemption and adoption, and reducing euthanasia. (See, e.g., Sen.

---

[12] Senate Bill No. 1785 also added provisions to the Food and Agricultural Code and the Civil Code specifying that it is "the policy of the state" that adoptable and treatable animals should not be euthanized. (See § 17005, subds. (a), (b), added by Sen. Bill No. 1785, § 10; Civ. Code, § 1834.4, subds. (a), (b), added by Sen. Bill No. 1785, § 5.)

[13] We take judicial notice of the legislative history of Senate Bill No. 1785. (See *People v. Superior Court (Ferguson)* (2005) 132 Cal.App.4th 1525, 1531–1533 [34 Cal.Rptr.3d 481].)

[14] Some committee reports refer to a statement by an opponent of Senate Bill No. 1785, Pat Claerbout, the Director of El Dorado County Animal Control, who stated that a holding period of six business days "would necessitate the holding of animals for a minimum of up to eight days, since weekends do not constitute business days. During the holidays, shelters could be required to hold animals for as long as eleven or twelve days." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Apr. 29, 1998, "ARGUMENTS IN OPPOSITION"; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Apr. 14, 1998, "COMMENT," par. 2(a).) This statement by an individual opponent of the bill is not evidence of the Legislature's collective intent. (See, e.g., *Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1425–1426 [96 Cal.Rptr.2d 314] [in analyzing legislative history, courts generally consider only materials "indicative of the intent of the Legislature *as a whole*"; materials showing the motive or understanding of an individual legislator, including the bill's author, or other interested persons, are generally not considered, because "such materials are generally not evidence of the Legislature's *collective* intent"].) Judge Cram correctly declined to consider this statement in seeking to ascertain the Legislature's intent.

Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Aug. 24, 1998, "ARGUMENTS IN SUPPORT"; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Apr. 14, 1998, "COMMENT," par. 1, 4; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended June 18, 1998, "BACKGROUND," par. 1; Sen. Com. on Appropriations, Fiscal Summary, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Apr. 29, 1998, "STAFF COMMENTS.")

### 3. *"Business Days" Do Not Include Saturdays*

In light of the statutory language and the express legislative findings accompanying the 1998 amendments to section 31108(a), we conclude that the term "business days" in that statute includes weekdays (Monday through Friday), but excludes Saturdays. As we explain below, our construction of "business days" most reasonably comports with the Legislature's express findings in amending the statute.

Consideration of the legislative purposes—lengthening holding periods and ensuring access for redemption and adoption—supports a construction of "business days" that *excludes* Saturdays. Treating only weekdays, and not Saturdays, as "business days" will in many instances result in longer holding periods, at least when a holding period includes a weekend. Excluding Saturdays is also consistent with the legislative goal of access, because longer holding periods will often provide more opportunities for redemption and adoption. As the trial judge noted in his order overruling defendants' demurrer, if "business days" means weekdays, "the hold period is significantly expanded, if a weekend falls in the middle of the four business days. Impounded dogs are held longer, making owner redemption more likely and decreasing the chance of having to euthanize the dog."[15]

In addition, as noted above, the exceptions to the six-business-day holding period promote access by providing an incentive (a shorter, four-business-day holding period) for shelters that make dogs available for owner redemption on weekend days or weekday evenings (§ 31108(a)(1)), and for smaller

---

[15] Defendants contend that construing "business days" to include Saturdays would not shorten holding periods. CCCAS does not count Monday as a "business day," because its shelters are closed on Monday; defendants argue that, under their interpretation, there are five "business days" in a typical calendar week, just as there are if Mondays through Fridays are counted as "business days." As discussed below, we need not determine in this appeal whether a weekday on which a shelter is closed (such as Monday, in CCCAS's case) is a "business day." But, under either resolution of that question, construing "business days" to exclude Saturdays results in longer holding periods—counting Tuesday through Friday (instead of Tuesday through Saturday) as "business days" results in a longer holding period; counting Monday through Friday (instead of Monday through Saturday) also results in a longer period.

shelters that establish procedures for owners to reclaim their dogs by appointment at a mutually agreeable time when the shelter would otherwise be closed (§ 31108(a)(2)). This incentive applies regardless of whether Saturday is treated as a "business day." The Legislature thus expressly addressed the significance to be given to "weekend day[s]" in determining the length of the holding period—a shelter that makes a dog available for owner redemption on a "weekend day" only needs to hold that dog for four, instead of six, business days. (§ 31108(a)(1).) Accordingly, a construction of "business days" that excludes Saturdays is consistent with the legislative goal of access, including the specific goal of encouraging shelters to "be open during hours that permit working pet owners to redeem pets during nonworking hours."[16] (Stats. 1998, ch. 752, § 1, subd. (b)(2), p. 4904.)

By contrast, a construction of "business days" that *includes* Saturdays would often result in shorter holding periods, and thus fewer opportunities for redemption or adoption. Arguably, such a construction would promote the goal of access to some degree by providing an *additional* incentive for shelters to remain open on Saturdays, i.e., a shelter that is open on Saturdays could take advantage of the shorter, four-business-day holding period *and* could count Saturday as a "business day" in computing that period. However, because the Legislature already provided an explicit incentive for shelters to remain open on "weekend days," and because construing "business days" to include Saturdays would result in shorter holding periods, we conclude that this result is not reasonable in light of the legislative purposes.

In short, if the Legislature, having provided an incentive for shelters to remain open on weekend days, had also intended to permit shelters to count Saturdays as "business days" (thus further shortening the total number of calendar days in the holding period), we would expect a clearer expression of such an intention in the statute. More broadly, a construction of "business days" that includes Saturdays would both (1) shorten the holding period, and

---

[16] In her order granting summary judgment, Judge Cram stated that, if shelters could not count Saturdays as "business days" in calculating the holding period, they "would have no incentive to stay open on Saturdays." This is incorrect. As we discuss above, under any interpretation of "business days," section 31108(a) provides an incentive for shelters to make dogs available on weekend days—the shorter holding period of four business days. (§ 31108(a)(1).)

Judge Cram also stated that shelters (like the CCCAS shelters) that are open on Saturday but closed on a weekday would be "penalized," because "neither day would count toward the holding period." As noted, we do not reach in this appeal the question of whether a weekday on which a shelter is closed is a "business day." But, regardless of the answer to that question, a shelter that is open on Saturday is not penalized, but is rewarded with the shorter, four-business-day holding period; a shelter that instead is open Monday through Friday and is closed on weekday evenings and weekends must comply with the six-business-day holding period. (§ 31108(a).)

(2) reduce the opportunities for redemption and adoption. It thus would fail to achieve the dual purposes reflected in the legislative findings.

Accordingly, in the absence of a clear expression of legislative intent to treat Saturdays as "business days," and in light of our obligation to choose a construction that most closely comports with the Legislature's intent and promotes, rather than defeats, the statute's general purposes (see *Smith, supra,* 39 Cal.4th at p. 83; *California Highway Patrol, supra,* 135 Cal.App.4th at pp. 496–497), we conclude that "business days" in section 31108(a) means Monday through Friday, the meaning most commonly used in ordinary discourse.

■ Defendants' remaining arguments to the contrary are not persuasive. First, defendants contend that we should adopt the definition of "business days" in Civil Code section 9 (which includes Saturdays), because the different codes should be regarded as " 'blending' " into each other, and because we must presume the Legislature was aware of Civil Code section 9 when it included the term "business days" in section 31108. Courts have stated that, "for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute." (*In re Porterfield* (1946) 28 Cal.2d 91, 100 [168 P.2d 706]; see *People v. Vassar* (1962) 207 Cal.App.2d 318, 322–323 [24 Cal.Rptr. 481].) And, in construing section 31108, we presume the Legislature was aware of existing laws, including prior statutory and judicial constructions of the term "business days." (See *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1096 [271 Cal.Rptr. 44]; *People v. Scott* (1987) 194 Cal.App.3d 550, 556, fn. 5 [239 Cal.Rptr. 588].) However, neither of these principles is dispositive here, because the codes reflect differing definitions of "business days." Neither the principle of "blending" codes together nor the Legislature's presumed knowledge of existing definitions of "business days" serves as an interpretive aid in determining the proper construction of the term "business days" here.[17]

■ Second, defendants, citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha Corp.*), argue that we should defer to CCCAS's interpretation of "business days." While it is often appropriate for a court to give some deference to an interpretation by a state agency charged with administering a particular statutory scheme (see *Yamaha Corp.,* 19 Cal.4th at pp. 7–8, 14–15), this principle is of little assistance in this case, because the many local public and private agencies that operate shelters may have inconsistent interpretations of

---

[17] In his order overruling defendants' demurrer, the trial judge stated that treating the codes as "blending together" would require the court "to arbitrarily select a meaning of 'business days' from the many definitions in the law."

"business days." (See *California Highway Patrol, supra,* 135 Cal.App.4th at pp. 501–502 [rejecting argument that Legislature failed to modify, and thus tacitly approved, a local agency practice; "While this principle may apply when a state agency is charged with administering a particular statutory scheme, it has dubious application when numerous cities and counties are charged with applying state law, particularly when they apply the law inconsistently."].)[18]

 Third, defendants assert that interpreting "business days" in section 31108(a) to exclude Saturdays would require shelters to maintain "dual calendaring systems for stray dogs: one which would determine if a stray dog was made available for owner redemption on a Saturday, thus reducing the holding period from six to four business days; and a second calendar which would calculate the overall holding period for the stray dog, yet exclude Saturday." However, any recordkeeping burden on shelters does not result from our interpretation of "business days," but from the structure of the statute itself. Under any interpretation of "business days," a shelter must keep track of (1) whether an individual dog was made available for owner redemption on a weekday evening or a weekend day and thus may be held for four, rather than six, business days (see § 31108(a)(1)), and (2) how many "business days" the dog has been held (see § 31108(a)).

 Finally, defendants focus on the language of section 31108(a)(2), which specifies a shorter, four-business-day holding period for a shelter that "has fewer than three full-time employees or is not open during all *regular weekday business hours*" and has a procedure for owners to reclaim dogs by appointment. (§ 31108(a)(2), italics added.) Defendants argue that if we construe "business days" to mean Monday through Friday, then the phrase "regular weekday" before "business hours" is surplusage, a result that should be avoided. However, in our view, the phrase "regular weekday business hours" is simply a reference to the usual hours of operation during weekdays. This language in section 31108(a)(2) provides an incentive (a shorter holding period) for shelters to provide a procedure for owners to redeem their dogs by appointment, just as section 31108(a)(1) provides an incentive (a shorter

---

[18] Defendants note that the City of Berkeley and the County of Los Angeles have adopted local code provisions stating that Saturdays are treated as "business days" in this context. (See Berkeley Mun. Code, § 1.04.080(C) ["[f]or purposes of calculating the number of days an animal is to be held at the animal shelter pursuant to state or local law, a business day shall include any Saturday on which the shelter is open"]; L.A. County Code, §§ 10.08.010, 10.08.075 [for purposes of tit. 10 of code ("Animals"), " '[b]usiness days' are all days other than Sunday and legal holidays"].) These local code provisions, which were adopted after the Legislature added the term "business days" to section 31108 in 1998, are not persuasive evidence as to the Legislature's intent. (See Berkeley Mun. Code, § 1.04.080, added by "[Berkeley] Ord. 6779-N.S. § 1, 2003: [Berkeley] Ord. 6511-N.S. § 1, 1999"; L.A. County Code, § 10.08.075, added by L.A. County Ord. No. 2000-0075, § 6 (2000).)

holding period) for shelters to make dogs available for owner redemption on weekday evenings and weekend days. The reference to "regular weekday business hours" in section 31108(a)(2) does not address or define the broader term at issue in this suit—"business days." Accordingly, defendants' argument based on the language of section 31108(a)(2) is not persuasive.

For the foregoing reasons, we conclude that the trial court erred by interpreting "business days" in section 31108(a) to include Saturdays.

### 4. *The Holding Period in This Case*

■ Because Saturday is not a "business day," the holding period that CCCAS calculated for Purifoy's dog Duke did not comply with section 31108(a). As noted above, Duke was impounded on Thursday, October 5, 2006, and was adopted by a new owner on Wednesday, October 11, 2006. Because Duke was made available for owner redemption on a weekend day (Saturday, Oct. 7, 2006), the applicable holding period under section 31108(a)(1) was "four business days, not including the day of impoundment." (§ 31108(a)(1).) In calculating the holding period, CCCAS counted the following days as "business days": (1) Friday, October 6, 2006; (2) Saturday, October 7, 2006; (3) Tuesday, October 10, 2006; and (4) Wednesday, October 11, 2006.

For the reasons discussed above, Saturday, October 7, 2006, was not a "business day" within the meaning of section 31108(a).[19] In the trial court, defendants conceded that, if Saturday is not a "business day" under section 31108, CCCAS did not hold Duke for the minimum holding period. CCCAS

---

[19] In addition, the parties agree (for different stated reasons) that Monday, October 9, 2006, was not a "business day." Defendants do not count Mondays as "business days" because the CCCAS shelters are closed on Mondays; plaintiffs argue more narrowly that Monday, October 9, 2006, was not a "business day" because it was Columbus Day, a legal holiday.

In their briefs, plaintiffs do not state a position as to whether a *nonholiday* weekday on which a shelter is closed is a "business day" under section 31108(a). Plaintiffs do argue generally that an interpretation of "business days" that depends on whether a given shelter is open on certain days (such as the interpretation adopted by Judge Cram) is inappropriate because it permits individual shelters to "decide the meaning" of the term "business days." In a related argument, plaintiffs challenge Judge Cram's ruling excluding evidence of the number of shelters in California, which plaintiffs introduced to support their claim that allowing a large number of shelters to "define" the term "business days" would be unworkable.

In this appeal, we need not decide whether a shelter must be open on a nonholiday weekday in order to count that day as a "business day," because the only weekday on which the CCCAS shelters were closed during the holding period for Duke was a holiday (Monday, Oct. 9, 2006). Accordingly, we need not address plaintiffs' arguments on this point, or their challenge to Judge Cram's evidentiary ruling.

held Duke for only three business days, not including the day of impoundment: (1) Friday, October 6, 2006; (2) Tuesday, October 10, 2006; and (3) Wednesday, October 11, 2006.[20]

### C. *The Three-day Owner Redemption Period*

Plaintiffs contend that, even if "business days" in section 31108(a) includes Saturdays, CCCAS violated the statute by permitting the adoption of Purifoy's dog Duke on the fourth business day after his impoundment. Plaintiffs claim that CCCAS was obligated to hold Duke exclusively for owner redemption for the entire four-business-day holding period. Although we need not reach this question in light of our conclusion above that Saturdays are not "business days" and that therefore CCCAS did not hold Duke for the required minimum holding period, we will address plaintiffs' argument to provide guidance to the parties and future litigants.

Plaintiffs are incorrect in asserting that a shelter must hold a dog exclusively for owner redemption for the entire holding period. The last sentence of section 31108(a) expressly specifies that "stray dogs shall be held for owner redemption during the first *three* days of the holding period, not including the day of impoundment, and shall be available for *owner redemption or adoption* for the remainder of the holding period." (§ 31108(a), italics added.)

Plaintiffs argue briefly that this sentence applies only to the four-business-day holding period set forth in section 31108(a)(2) (applicable to smaller shelters). This is incorrect. The last sentence of section 31108(a) applies to all of the holding periods specified in section 31108(a), i.e., the default six-business-day holding period and the four-business-day holding periods specified in section 31108(a)(1) and (2). That sentence appears in a separate paragraph at the end of section 31108(a). It is not part of section 31108(a)(2), and there is no indication that it should apply only to the holding period specified in section 31108(a)(2).

Even if this result were not clear from the face of the statute, we also note that plaintiffs' interpretation would be contrary to legislative intent and would lead to absurd results. As noted above, in section 1 of Senate Bill No. 1785, the Legislature stated its intention to promote both owner redemption *and*

---

[20] Plaintiffs argue in their reply brief that Contra Costa County Code section 22-2.202 requires county offices to be open Monday through Friday, and that the CCCAS shelters violate this provision by staying open on Saturday and closing on Monday. We need not address this argument, because plaintiffs did not raise it in their opening brief (see *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770]), and because we reverse on other grounds.

adoption, and to reduce euthanasia. (Stats. 1998, ch. 752, § 1(a)(2), (b)(1)–(2), (c)(1), (h), (i), pp. 4903–4905.) To promote these goals, the Legislature stated that "the duties of shelters to properly care for an animal do not cease *if the owner of a lost animal does not claim the animal*"; in that event, the shelter "*should have the duty to make the animal available for adoption for a reasonable period of time* and to care properly for the animal during this period" (*id.*, § 1(h), p. 4905, italics added). Under plaintiffs' interpretation, a shelter would have to hold an impounded dog exclusively for owner redemption for the entire holding period (if either the default six-business-day holding period or the four-business-day holding period in § 31108(a)(1) applied); the dog could then be euthanized without ever being made available for adoption.

The legislative history of Senate Bill No. 1785 provides additional confirmation that an impounded dog is to be held exclusively for owner redemption for the first three days of the holding period, and is to be available for owner redemption *or* adoption for the remainder of the period. For example, one analysis of the bill states: "Any impounded animal that may be legally owned must be held for six business days before it may be killed. [Senate Bill No. 1785] provides that an impounded animal would be available for owner redemption during the first three business days and for adoption or owner redemption during the following three business days." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Aug. 24, 1998, "ANALYSIS," par. 1; accord, Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended June 18, 1998, "SUMMARY," par. 2.a; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended June 18, 1998, "SUMMARY," par. 2.a; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1785 (1997–1998 Reg. Sess.) as amended Apr. 14, 1998, "DESCRIPTION.")

Finally, the Legislative Counsel's Digest accompanying the Legislature's subsequent amendments to section 31108 (in 2000) states: "Existing law provides that stray animals shall be held for owner redemption during the first 3 days of the holding period, not including the day of impoundment, and shall be available for owner redemption or adoption for the remainder of the holding period." (Legis. Counsel's Dig., Assem. Bill No. 2754 (1999–2000 Reg. Sess.).)

## IV. DISPOSITION

The judgment is reversed. The case is remanded to the trial court with directions to consider the remaining issues raised in defendants' motion for summary judgment/adjudication and in plaintiffs' motion for summary adjudication.

In addressing the above matters, the court shall treat the following as established: (1) Saturday is not a "business day" within the meaning of section 31108(a); (2) under all of the holding periods outlined in section 31108(a), a shelter must hold an impounded dog exclusively for owner redemption for the first three business days of the holding period, not including the day of impoundment, and may then make the dog available for owner redemption or adoption beginning on the fourth business day of the holding period; and (3) CCCAS did not hold Purifoy's dog for the minimum holding period specified in section 31108(a).

Plaintiffs shall recover their costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.