Filed 6/27/16  Mehraby v. Minassi CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROOBEN MEHRABY et al., | B258300 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC453409) |
| v. | |
| JULIET MINASSI et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed with instructions.

Law Offices of Jilbert Tahmazian and Jilbert Tahmazian for Defendants and Appellants.

Der-Parseghian Law Group and Mary Der-Parseghian for Plaintiffs and Respondents.

# I.  INTRODUCTION

Defendants, Juliet and Vahan Sean Minassi, appeal from an order denying their new trial motion.  This lawsuit was brought by plaintiffs, Rooben and Karita Mehraby, after an unsuccessful attempt to purchase a home.  Ms. Minassi executed a short sale purchase agreement for a home then owned by her.  The trial court ordered specific performance of the purchase agreement.  Defendants then filed a new trial motion which was denied.  We conclude all of plaintiffs' claims are barred by the cancellation agreement dated December 13, 2010.  We reverse the judgment in plaintiffs' favor.  Upon remittitur issuance, judgment is to be entered in defendants' favor.

# II.  BACKGROUND

## A.  Factual Background Prior to the Complaint's Filing

On April 29, 2010, plaintiffs and Ms. Minassi signed a purchase agreement for a home located at 3117 Emerald Isle Drive in Glendale, California (the property).  Plaintiffs agreed to purchase the property from Ms. Minassi for $650,000.  Plaintiffs deposited $19,500 as an initial deposit with Glen Oaks Escrow.  The purchase agreement included a short sale addendum.  The short sale addendum provided, "This [purchase] Agreement is contingent upon Seller's receipt of written consent from all existing secured lenders and lienholders ('Short-Sale Lenders') . . . . ."  No deadline was provided in the short sale addendum.

The purchase agreement contained a 14-day deadline for plaintiffs to remove all loan contingencies.  E-mails involving Glen Oaks Escrow's agent, Kristen Hartwick, indicated an extension was obtained for the sale.  On July 21, 2010, the short sale lender countered with a new purchase price of $765,000.  During trial, Ms. Hartwick testified that she believed the short sale had been approved.  Mr. Minassi testified that he saw an

approval letter from Ms. Minassi's bank regarding the short sale. The property sale's deadline was December 22, 2010.

Sometime shortly before December 13, 2010, plaintiffs' lender wanted an appraisal of the property. One of plaintiffs' daughters testified that on the scheduled appraisal day, her family received a phone call that no one was at the property. Ms. Mehraby and her two daughters drove to the property and knocked on the door. They heard movement inside the residence but no one came to the door. They left a note on the door. They drove up the street and saw Ms. Minassi's car. Driving back to their home, they saw that the note was removed approximately two minutes later. The appraisal was not completed. Ms. Minassi cancelled the escrow in writing on December 13, 2010. Plaintiffs were unable to reschedule another appraisal. Plaintiffs filed their complaint for contract breach and breach of the implied covenant of good faith and fair dealing (implied covenant breach) on January 20, 2011.

## B. December 13, 2010 Cancellation Agreement

On December 13, 2010, Ms. Minassi submitted a signed document entitled "Cancellation Instructions" (cancellation agreement) to Glen Oaks Escrow. The cancellation agreement, dated December 13, 2010, states in pertinent part: "The undersigned hereby mutually agree and instruct Escrow Holder to cancel this escrow, and the California Residential Purchase Agreement and Escrow Instructions together with Counter Offers, Supplements, Addendums and/or Amendments, in its entirety. Upon cancellation of this escrow all parties hereby release each other, Real Estate Broker, if any, Mortgage Broker, if any, and Glen Oaks Escrow and its officers from any and all liability and/or responsibility both legally and equitably in connection therewith and hold said entities or individuals harmless from any and all respects relating to this transaction and they do hereby, both jointly and severally, indemnify Glen Oaks Escrow against any loss, cost or liability, of any kind or nature, including reasonable attorneys fees that it might sustain in complying with these instructions. [¶] Upon receipt of these

3

cancellation instructions executed by all named parties herein below, funds on deposit shall be disbursed as follows: [¶] $19,500.00 to Buyer . . . . [¶] EACH OF THE UNDERSIGNED STATES THAT HE HAS READ THE FOREGOING INSTRUCTIONS AND UNDERSTANDS THEM AND DOES HEREBY ACKNOWLEDGE RECEIPT OF A COPY OF THESE INSTRUCTIONS." At trial, Mr. Mehraby testified that plaintiffs signed the cancellation instructions on or about December 13, 2010. It is undisputed plaintiffs signed the cancellation agreement.

On May 25, 2011, at 12:15 p.m., Matthew Davis, the attorney for Glen Oaks Escrow, wrote the following e-mail to Mary Der-Parseghian, plaintiffs' lawyer: "This e[-]mail follows up on our conversation a few minutes ago regarding the above escrow and action. As discussed, Glen Oaks Escrow received from clients' [sic] Rooben Mehraby and Karita Bazik, the Buyers, an executed Cancellation Instruction [sic] for the above escrow. This Cancellation Instructions, dated December 13, 2010 was previously signed by the Seller and has been awaiting for the Buyers' signature to formally cancel the subject escrow. As this is now a mutual cancellation instruction, Glen Oaks Escrow will proceed to prepare a check for the balance of the deposit, as provided for in the Cancellation Instruction [sic]. Attached for your reference is a copy of the Cancellation Instruction [sic] received from your clients."

On May 25, 2011, at 12:53 p.m., Ms. Der-Parseghian e-mailed her response to Mr. Davis: "Please be advised that this document has been rescinded, cancelled and void as my clients were given this document to execute in the mist [sic] of other documents while opening a new escrow for another unrelated transaction. At this time I request that a new escrow instruction be written to release the funds held in escrow without a boilerplate release of the sellers or agents involved as litigation continues . . . ."

On May 25, 2011, at 3:17 p.m., Mr. Davis e-mailed Ms. Der-Parseghian: "First, until Glen Oaks [Escrow] receives a formal letter signed by the Buyers expressly rescinding the previous cancellation instruction, from the Escrow Holders [sic] perspective it remains a valid instruction. The Escrow Holder does not have any concern with how the Buyers agreed to sign the cancellation instruction, but I'm informed that the

4

[sic] confirmed to the escrow holder that they had in fact signed the cancellation agreement. [¶] Second, . . . I will also require that Glen Oaks receive a release and indemnity from the buyers and seller as consideration for not charging a cancellation fee. This new Amended Cancellation Agreement, but [sic] be signed by both the Buyers and Seller before Glen Oaks can disburse the funds." Ms. Der-Parseghian e-mailed Mr. Davis her response: "Client already went to escrow and obtained the cancellation notice thereby rescinding it! Second, yes, your client can prepare another escrow instruction along the terms: the escrow is cancelled; the funds are to be returned to the buyers, and that Buyers and seller reserve any and all rights they have under the Purchase Agreement as against each other."

On June 29, 2011, Ms. Der-Parseghian e-mailed Mr. Davis regarding the status of the amended cancellation agreement. Mr. Davis responded in his e-mail: "At your direction on May 31, 2011, Glen Oaks Escrow prepared and circulated an 'Amended' Cancellation Instruction [sic], to address your clients' as Buyers revocation of their signature on the original mutually executed cancellation instruction. This Amended Cancellation Instruction [sic] has not been returned signed by either party and is not valid. Therefore, unless the Buyers are hereby Instructing Escrow that they are withdrawing their prior revocation of the mutual cancellation instruction, what are you talking about? [¶] You may recall, Glen Oaks Escrow agreed to honored [sic] your clients [sic] request to revoke the mutually executed cancellation instruction that contained a release of liability between the buyers and seller that was in conflict with their current litigation. I don't know what's going on with the buyers or sellers or how your client [sic] can believe they are entitled to the funds without a mutually executed cancellation instruction, but if a resolution is not reached in the next 30-days pursuant to a stipulation between the parties or a Court Order Glen Oaks Escrow will consider interpleading the funds in dispute."

Ms. Der-Parseghian e-mailed Mr. Davis to request that he send her the amended cancellation agreement so she could get all the parties to sign. Mr. Davis e-mailed the amended cancellation agreement to Ms. Der-Parseghian and noted, "It almost goes

5

without saying that it must be signed by both buyers and seller before it's effective." There is no written evidence of any signed amended cancellation agreement. At trial, Mr. Mehraby testified that he received the $19,500 held by Glen Oaks Escrow sometime in 2013.

### C. Recordation of the Pending Action Notice, Trial and New Trial Motion

As noted, on January 20, 2011, plaintiffs filed their complaint against both defendants. Plaintiffs allege causes of action for: contract and implied covenant breach; unjust enrichment; fraud; and specific performance. Plaintiffs also recorded a pending action notice on the property on January 24, 2011. On June 29, 2011, after the filing of the complaint, Ms. Minassi transferred 10 percent interest in the property to Mr. Minassi.

On April 21, 2014, this case proceeded to a bench trial on the contract and implied covenant breach causes of action. Plaintiffs solely requested specific performance of the contract as their remedy. On May 21, 2014, the trial court entered judgment in favor of plaintiffs and against defendants. No statement of decision was requested or produced. The trial court ordered, "Defendants . . . must promptly execute such reasonable documents and instruments and promptly perform such reasonable acts as may be required to fully and completely deliver the real property . . . under the Purchase Agreement to Plaintiffs . . . ." The trial court also awarded plaintiffs their attorney's fees and costs.

On June 12, 2014, defendants moved for a new trial and to vacate the judgment. On July 18, 2014, the trial court denied defendants' motion. This appeal followed.

6

### III.  DISCUSSION

### A.  Appealability

We note in their notice of appeal defendants appealed from the order denying their new trial motion.  An order denying a motion for new trial is nonappealable.  (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18 (*Walker*); *Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 156; *Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 608.)  However, a notice of appeal must be liberally construed.  (Cal. Rules of Court, rule 8.100(a)(2); *Walker*, *supra*, 35 Cal.4th at p. 22.)  The deadline to file a notice of appeal was extended 30 days from the date the denied the new trial motion was denied.  (Cal. Rules of Court, rule 8.108(b)(1)(A); *Adaimy v. Ruhl* (2008) 160 Cal.App.4th 583, 586.)  The new trial motion was denied on July 18, 2014.  The thirtieth day thereafter would be August 17, 2014.  However, that day was a Sunday.  Under the Code of Civil Procedure, the deadline was moved to the next non-holiday day.  (Code Civ. Proc., §§ 10, 12, 12a; see *Purifoy v. Howell* (2010) 183 Cal.App.4th 166, 175.)  Defendants timely filed their notice of appeal on August 18, 2014.  There is no basis for concluding that plaintiff's have been misled or prejudiced by allowing the appeal to proceed.  As indicated by their brief, plaintiffs were well aware that defendants appealed from the underlying judgment.  Accordingly, we construe defendants' notice of appeal as an appeal from the underlying judgment.  (*Walker*, *supra*, 35 Cal.4th at p. 22; *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 819, fn. 1)

### B.  Applicable Legal Standard of Review

The interpretation of written instruments is generally reviewed de novo.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866; *Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1499-1500.)  We review a trial court's resolution on disputed facts for substantial evidence.  (*Winograd v. American Broadcasting Co.* (1998)

68 Cal.App.4th 624, 632; *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) The Court of Appeal held: "'[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously, the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record. [Citation.] While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citation]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633; accord, *Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1144; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

Because there was no statement of decision, we will presume the trial court made all factual findings necessary to support the judgment for which substantial evidence exists in the record. (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793; *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148.) The Court of Appeal held: "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support to the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendment and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. [Citations.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58, citing *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

8

C.  The December 13, 2010 Cancellation Agreement Released All Parties from Liability Under the Purchase Agreement

Defendants assert plaintiffs agreed to the December 13, 2010 cancellation agreement that released all parties from liability under the purchase agreement. According to defendants, this occurred when plaintiff's signed and returned the cancellation agreement to Glen Oaks Escrow.  Plaintiffs assert the cancellation agreement was rescinded.  Plaintiffs contend they signed and returned the cancellation agreement because it was executed in the midst of the review of other documents prepared in an unrelated transaction.

We are required to imply findings supporting the judgment if the findings are supported by substantial evidence.  (*Michael U. v. Jamie B.*, *supra*, 39 Cal.3d at pp. 792-793; *Fair v. Bakhtiari*, *supra*, 195 Cal.App.4th at p. 1148.)  In order to effectuate the judgment, the trial court's implied findings were that the cancellation agreement was not effective.  However, this finding is unsupported by substantial evidence.

First, there was a valid cancellation agreement on May 25, 2011.  It is undisputed Ms. Minassi sent a signed cancellation agreement to Glen Oaks Escrow on December 13, 2010.  The December 13, 2010 cancellation instructions expressly ordered Glen Oaks escrow to cancel the purchase agreement.  It is also undisputed plaintiffs sent a signed cancellation agreement dated December 13, 2010, to Glen Oaks Escrow on May 25, 2011.  Signed by plaintiffs, the document is the precise same set of instructions executed by Ms. Minassi.  Plaintiffs assert that the inference from Mr. Davis' May 25, 2011 e-tmail is the cancellation agreement was signed that day.  Such an inference is contradicted by Mr. Mehraby's own testimony that plaintiffs signed the cancellation agreement on December 13, 2010.  Regardless of the date plaintiffs executed the cancellation agreement, it released defendants from any obligations under the purchase agreement.  Whether the inference drawn from the May 25, 2011 e-mail or Mr. Mehraby's testimony that it was executed on December 13, 2010 is credited, the result is the same.

9

For an offer to be accepted, it must be communicated. Civil Code section 1582 provides, "If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." (See *Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 311; *Gray v. Stewart* (2002) 97 Cal.App.4th 1394, 1397.) Here, the cancellation agreement, executed by plaintiffs and Ms. Minassi, was on Glen Oaks Escrow letterhead. The cancellation agreement was directed to Glen Oaks Escrow. Sending a signed cancellation agreement to Glen Oaks Escrow was a sufficient communication of acceptance. The acceptance of the cancellation agreement was communicated on May 25, 2011, when plaintiffs sent it to Glen Oaks Escrow. (See *Hofland v. Gustafson* (1955) 132 Cal.App.2d Supp. 907, 909 [release becomes effective upon maker's signing and delivery of the writing]; Rest.2d Contracts, § 65 ["Unless circumstances known to the offeree indicate otherwise, a medium of acceptance is reasonable if it is the one used by the offeror or one customary in similar transactions at the time and place the offer is received. "]; Rest.2d Contracts, § 30 ["Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances."].) The cancellation agreement cancels the purchase agreement and contains a full release of liability for plaintiffs and defendants from any lawsuit stemming from the purchase agreement. Thus, if the cancellation agreement is in effect, plaintiffs' contract breach and implied covenant breach causes of action fail as a matter of law. (Civ. Code, § 1541 ["An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing with or without new consideration."]; *Tarpy v. County of San Diego* (2003) 110 Cal.App.4th 267, 276.)

Plaintiffs contend they rescinded their acceptance of the cancellation agreement. Civil Code section 1689, subdivision (b) provides in relevant part: "A party to a contract may rescind the contract in the following cases: [¶] (1) If the consent of the party rescinding . . . was given by mistake . . . ." (See *Marzec v. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889, 914; *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261,

10

278-279.) There is no testimony by plaintiffs they rescinded the cancellation. And plaintiffs make no assertion of duress, menace, fraud or undue influence.

No other provisions of Civil Code section 1689, subdivision (b) apply. A unilateral mistake of law or fact may permit a party to rescind a contract. Civil Code section 1577 states in relevant part: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance of a fact past or present, material to the contract . . . ." Civil Code section 1578 states in relevant part: "Mistake of law constitutes a mistake, within the meaning of this Article, only when it arises from: [¶] . . . [¶] 2. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify." (See *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278-279; *Harris v. Rudin, Richman & Appel* (2002) 95 Cal.App.4th 1332, 1341 & fn. 19.) Despite the availability of the rescission remedy, plaintiffs' admitted negligence in this case bars reliance on unilateral mistake theory. (*Wal-Noon Corp. v. Hill* (1975) 45 Cal.App.3d 605, 615; *Lawrence v. Shutt* (1969) 269 Cal.App.2d 749, 765.)

There is no substantial evidence which can support a lawful finding that plaintiffs committed a mistake of law or fact thereby permitting rescission of the cancellation agreement. The mistake plaintiffs assert is that they did not mean to cancel the purchase agreement. Plaintiffs contend they clearly did not intend to release defendants from liability under the purchase agreement because of the filed their complaint on January 20, 2011. However, by signing the cancellation agreement, plaintiffs expressly agreed that they had read and understood the document. Plaintiffs also contend Glen Oaks Escrow "honored" their request to revoke the mutually executed cancellation instruction. Plaintiffs have not explained how Glen Oaks Escrow could lawfully revoke their acceptance of the cancellation agreement. Glen Oaks Escrow was not a party to the cancellation agreement nor do any of the escrow instructions grant it the power to revoke a cancellation agreement.

11

Defendants have proven the existence of a valid cancellation agreement which cancelled the purchase agreement and released all parties from legal liability. The release bars the contract and implied covenant breach causes of action in plaintiffs' complaint and deprives them of the opportunity to secure the specific performance remedy. There is no substantial evidence which would support a finding that the cancellation agreement was not in effect by the time of trial. Thus, the judgment must be reversed. We need not decide the parties' remaining arguments about whether plaintiffs met a condition precedent for the purchase agreement.

## IV.  DISPOSITION

The judgment is reversed. Upon remittitur issuance, judgment is to be entered in favor of defendants, Juliet and Vahan Sean Minassi, who shall recover their appellate costs from plaintiffs, Rooben and Karita Mehraby.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

RAPHAEL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12